[No. 5,908.—Department No. 1.]

## ESTATE OF CROSBY.

ESTATES OF DECEASED PERSONS—FINDINGS.—Whenever issues of facts are tried by the Probate Court, findings of fact are proper.

ID.—CLAIMS.—E. P. R., administrator of an estate, presented to the Probate Judge, for allowance, a claim against the estate, based, in part, upon a promissory note executed to him by the deceased, and, in part, upon a judgment against the deceased in favor of one E. R., of which E. P. R. was the equitable owner, but of which no assignment had been made to him, and the claim was allowed by the Judge. Upon a subsequent application for the sale of real estate, it was objected to the claim, that the judgment had never been assigned to E. P. R., and that the claim was not accompanied by a certified or other copy of the judgment. *Held*, that the claim was properly presented in the name of E. P. R., and that under the law as it stood, at the time it was presented, it was not necessary that it should be accompanied by a copy of the judgment.

ID.—SALE OF REAL ESTATE—LAPSE OF TIME—LACHES.—Courts of Probate have the power, and it is their duty, to refuse an order for the sale of real

estate, where there has been such delay in making the application as to amount to laches. So *held*, (upon the facts stated in the opinion) in a case where seventeen years had elapsed from the date of the allowance of claims before the application was made.

ID.—ID.—ID.—STATUTE OF LIMITATIONS.—A proceeding in the Probate Court for the sale of real estate is perhaps "a special proceeding of a civil nature," and, as such, subject to the limitation prescribed by § 363, Code of Civil Procedure; but *held*, unnecessary to decide the question.

APPEAL by the widow and heir of deceased, from an order of sale of real estate in the Probate Court of the County of Santa Clara.  PAYNE, J.

*S. F. Leib*, for Appellants.

No assignment of the judgment was made by Elliot Reed. ·It could only be presented in his name.  (*Marsh* v. *Dooley*, April Term, 1877.)  The judgment should have been authenticated either by the judgment itself or a certified copy.  (Probate Act, § 141.)

A claim against an estate must be deemed stale after it becomes seventeen years old, and no excuse is shown why it was not enforced earlier.  (*Beckett* v. *Selover*, 7 Cal. 240.)

A judgment against a living person can only be enforced after five years.  By analogy the time should not exceed that time in any case.  (*Ricard* v. *Williams*, 7 Wheat. 119.)  The decisions are uniform that such a delay is unreasonable, and such claims are deemed stale, and enforcement refused.  (*Mooers* v. *White*, 6 Johns. Ch. 360; *Scott* v. *Hancock*, 13 Mass. 162; *Ex parte Allen*, 15 id. 58; *Boyle* v. *Forbes*, 9 Tex. 41; *Fisk* v. *Norvell*, id. 14; *Blair* v. *Cisneros*, 10 id. 45; *Chandler* v. *Hudson*, 11 id. 37; *Hurt* v. *Horton*, 12 id. 285; *McGreal* v. *Jones*, 36 id. 673; *Woolfolk* v. *Beatly*, 18 Ga. 520; *Gilchrist* v. *Rea*, 9 Paige Ch. 73; *Estate of Godfrey*, 4 Mich. 308; *Ferguson* v. *Broome*, 1 Bradf. 20; *McCrary* v. *Tasker*, 41 Iowa, 255; *Wolf* v. *Ogden*, 66 Ill. 224; *Hall* v. *Woodman*, 49 N. H. 295; Roper on Jud. Sales, 99.)  It was proper for the Court to make findings.  (*Coveny* v. *Hale*, 49 Cal. 555.)

*Houghton & Reynolds*, for Respondent.

No finding of facts are authorized in this proceeding, (Code, § 1518) and if the petition is sufficient it will be affirmed, unless

attacked by a statement or bill of exceptions. (*Wetherbee* v. *Carrol*, 33 Cal. 549.) No claim can become stale while it is pending in Court. (*Estate of Schroeder*, 46 Cal. 304.) The cases cited by appellant's attorney were decided in States whose statutes are materially different from those of this State. E. R. Reed was the equitable owner of the judgment.

McKINSTRY, J.:

This is an appeal by the widow and child of the deceased from an " order of sale of real estate " of the late Probate Court for Santa Clara. We think when " issues of fact " were tried by the Probate Court, " findings " were proper. (Code Civ. Proc. §§ 1713, 1714, 1715, 1716.)

It is urged by appellants that the allowance by the Probate Judge of the claim presented by *Edward P. Reed* was improper, in so far as that claim included an alleged judgment in favor of *Elliott Reed* against Samuel J. Crosby, the decedent, for the following reasons: First, no assignment had been made by Elliott to Edward P. Reed; second, the judgment was not properly authenticated. The finding on the subject is as follows:

" On the 28th day of September, 1859, the said Edward P. Reed presented to the Probate Judge of said county for allowance a claim against said estate, which was based upon a promissory note made by said Samuel J. Crosby to said Reed on the 1st day of November, A. D. 1857, for $950, payable one day after date, with interest thereon from date until paid at the rate of two and one-half per cent. per month, and also upon a judgment rendered March 23d, A. D. 1858, in favor of Elliott Reed, and against the said Samuel J. Crosby, in the District Court of the Third Judicial District in and for the County of Santa Clara, for the sum of $2,587.50, with interest thereon from the date of its rendition until paid at the rate of two and one-half per cent. per month, together with all costs incurred by said Reed. Said claim was allowed by the Probate Judge the day on which it was presented, and a copy of which, with the indorsement thereon, is hereto annexed, marked Exhibit A, and made a part hereof

"Exhibit A.   The estate of Samuel J. Crosby to E P. Reed, Dr.   To a note of hand of which the following is a copy:

"'$950.00.   One day after date, for value received, I promise to pay Edward P. Reed or order, the sum of nine hundred and fifty dollars, with interest on the same from date until paid, at the rate of two and one-half per cent. per month.

"' (Signed)                         SAMUEL J. CROSBY.

"'SAN JOSE, November 1st, 1857.'

"Also to a judgment rendered March 23d, 1858, in favor of Elliott Reed, and against Samuel J. Crosby, for the sum of $2,587.50, with interest thereon at the rate of two and one-half per cent. per month from the 23rd of March, 1858, until paid, together with all costs accrued by said Reed.

"Said judgment being rendered in the District Court, in the County of Santa Clara.

"State of California, County of Santa Clara, ss.—I, Edward H. Reed, do solemnly swear, that the note above referred to of nine hundred and fifty dollars, together with the interest thereon, and the judgment above referred to of twenty-five hundred and eighty-seven dollars and fifty cents, together with the interest thereon, are justly due to me from the estate of Samuel J. Crosby, deceased; that no payments have been made thereon, and that there are no offsets to the same to my knowledge.

"EDWARD P. REED.

"Subscribed and sworn to this 28th day of September, 1859.

"JOHN H. MOORE, County Judge.

"State of California, County of Santa Clara, ss.—The within claim of Edward P. Reed against the estate of Samuel J. Crosby was presented to John H. Moore, Esq., Probate Judge for the County of Santa Clara, for his allowance this, the 28th day of September, 1859, and allowed by me.

"JOHN H. MOORE, Probate Judge.

"Indorsed:  Filed December 5th, 1859.

"JOHN B. HEWSON, County Clerk."

Other findings show that the judgment referred to was, in fact, rendered, but do not show that the original record of any transcript thereof was presented to the Probate Judge.   It is also found that the judgment was rendered upon a promissory note executed by Samuel J. Crosby to Elliott Reed; that the money

for which said note was given was the money of E. P. Reed, and no " assignment " of said judgment was ever made by Elliott Reed to E. P. Reed.

If E. P. Reed, the administrator, had an equitable interest in the judgment, the propriety of its presentation to the Probate Judge, and not to him, is manifest. No man should be a judge in his own cause. The allowance was of the judgment in favor of Elliott Reed. That the claim was presented by E. P. Reed, even as a portion of one " claim," which included the judgment, and also a note from deceased to E. P. Reed, does not change the effect of the allowance. Nor is it changed by the circumstance that in the affidavit of E. P. Reed, which accompanied the *claim*, the latter swore that the amount of the judgment was "justly due" to *him*. The statute did not require the claim based on the judgment to be *verified*. Elliott Reed ought not to be deprived of the benefit of the allowance by any of these circumstances. In *Marsh* v. *Dooley*, 52 Cal. 232, the note and mortgage were payable to *Darling*, or order, who was a resident of the county in which the letters of administration were issued; the note and mortgage remained in his possession, unassigned, until after the expiration of the time specified in the notice to creditors for the presentation of claims, without presentation. It was held that one who claimed an equitable interest in the note and mortgage could not subsequently present them. The difference between that case and the present is apparent. Here the claim, if properly presented at all, was presented within the time fixed by the notice, and presented by one whose authority to present is not contested by Elliott Reed—the fact of presentation being for *his* benefit.

Was the judgment ever presented as required by law? In the " objections " or answer of Evelyne C. Crosby, the widow, to the petition for the sale of the real estate, it is alleged : " Said judgment never was a legal charge or legally allowed against said estate, because, among other reasons, *neither it*, nor a certified nor any copy thereof was ever presented to the administrator of said estate, or to the Probate Judge of said county, or at all."

As the law stood when the claim was presented by E. P. Reed to the Probate Judge, in 1859, while it was required that " nec-

essary vouchers " should be exhibited to the administrator when the claim was presented, it was not requisite, if the claim was founded on a bond, bill, note or other instrument in writing, that the original should be presented and the allowance or rejection indorsed thereon or attached thereto. (Probate Act of 1851, § 131, Laws 1851, p. 464.) Nor was it necessary when a judgment had been rendered against the testator or intestate in his lifetime, that a certified copy of the judgment should be presented to the executor or administrator *as part of the claim*, although, doubtless, it was the duty of the executor or administrator to require evidence or vouchers sufficient to establish to his satisfaction the justice of every claim. (Id. § 141.) The requirements that original written obligations and certified copies of judgment should constitute the claims presented, or portions of them, are first found in subsequent amendments of the Probate Act. (Hittell's Gen. L. pp. 881, 2, 3, and 4.) When, therefore, the claim was presented to the Probate Judge, the portion of it relating to the judgment might properly consist only of a statement of the material parts of the judgment. It was the duty of the Judge to require proper and sufficient evidence of the existence of the judgment, and it must be presumed that he did. If he had erred by allowing the claim upon insufficient evidence, this would not have deprived his *allowance* of its *prima facie* quality as evidence of the validity of the claim. He was intrusted by law with the discretion of ascertaining, in the first instance, whether a claim was well founded. The *claim*, allowed or disallowed, constituted the record of his judicial action. The hearing with respect to the validity of a claim, (allowed by the administrator or Probate Judge) at a subsequent stage of the proceedings, when the heirs for the first time became parties, was not in the nature of a review upon appeal of the action of the administrator or Probate Judge. The final recognition of a claim as valid in no way depended upon the question whether the administrator or Probate Judge allowed it upon insufficient evidence. The law simply made the allowance *evidence prima facie* of the claim, and cast the *onus* of proof upon the heir contesting the claim ; in other respects the investigation at the return of the application for an order of sale was an original trial, in which the heir first had a standing in Court. It fol-

lows from what has been said that it is immaterial whether the original judgment in favor of Elliott Reed, (if that could be possible) or a copy of it, was presented to the Probate Judge when he allowed the claim based on that judgment.

The question which remains is, whether the Probate Court erred in granting the " order of sale " *seventeen years* after the claims were allowed by the Probate Judge. And herein is to be considered the question whether the Court had a discretion to reject the petition because of an unreasonable delay in presenting it.

In *Mooers* v. *White*, 6 Johns. Ch. 375, Chancellor Kent said, with reference to applications by executors and administrators for the sale of real estate under the law of New York: " I am not prepared to admit that the executor or administrator can at any time, in his discretion, apply for, and be *entitled* to an order for the sale of the real estate." * * * " The statute. (1 N. R. L. 450–53,) declares that the executor or administrator, when he shall discover or suspect that the personal estate is insufficient to pay the debts, shall, ' as soon as conveniently may be,' make a just and true account of the personal estate and debts, * * and shall deliver such account to the judge of probate or surrogate of the county, and request his aid in the premises. The judge is then to make an order directing, by due public notice, ' all persons interested in the estate,' to appear and show cause why so much of the real estate, whereof the testator or intestate died seized, should not be sold, as will be sufficient to pay the debts. He is then, at the time and place appointed, to ' hear and determine the allegations and proofs of the executor or administrator, and of all other persons interested in the estate,' who make or offer any." * * * " And if, ' upon the examination,' he shall find the personal estate not sufficient to pay the debts, he shall direct the whole or part of the real estate to be sold.' * * * * " This is the substance of the provisions of the act upon the subject, and I infer from them that the law intended that the executor or administrator should make his application with due diligence, and in reasonable time, and if he does not, the judge or surrogate has from the nature of his judicial trust a discretion to reject the application. What is a reasonable time may be another question. All I mean at

present to say is, that the judge of probates or surrogate must be entitled to determine, in sound discretion, what is a reasonable time under the circumstances of the case, and to determine when the executor did first discover, or had ground to suspect, the insufficiency of the personal estate, and whether, *as soon as conveniently might have been,* he had made out an account and filed an inventory, and applied the assets in hand according to the requisitions of the statute. If he had been guilty of gross negligence or palpable *laches* on these points, he is clearly not in season within the meaning of the act, and the judge or surrogate ought not to permit him, or the creditor who prompts him, by this summary proceeding to sweep away the real estate of the heir. Other provisions of the law show the like necessity of diligence in the settlement of the estate of the testator or intestate. The executor and administrator are required to file their inventory within six months after they have assumed their trust; and after the expiration of one year and not before, they may be called on to pay legacies, and make distribution among the next of kin. The law presumes that by that time they have ascertained the amount of the debts and of the assets, and have made due provision for the creditors, and are in a condition to distribute the surplus. The legatees and next of kin are then entitled to sue; and, perhaps, it would not be going too far to say, that, under the sound construction of the statute, and the pressing diligence which the provisions I have referred to evidently inculcate, the executor or administrator ought to be ready to apply, and ought to make his application within one year after he has entered upon the trust; and that every subsequent application, unless under peculiar circumstances and with some reasonable cause for delay, may, consistently with sound discretion and the spirit and policy of the act, be adjudged out of season and rejected." * * * * " All the analogous cases in the law show that these public trusts, created for the benefit of creditors, are to be executed promptly," etc.

· The statute of this State, in operation when the " claims " to satisfy which the sale of real estate was ordered in the case before us were allowed, contemplated a prompt settlement and distribution of the estates of deceased persons. Section 73 of the " Probate Act " provided that the penalty of the bond of the ad-

ministrator should be for twice the probable value of the *annual* rents, profits, and issues of the real property belonging to an estate. Section 128 required that the administrator should, " immediately after his appointment," cause to be published a notice requiring all persons having claims against the deceased to exhibit them to the administrator " within ten months after the *first publication* of the notice." Section 228, that the administrator should render a full account and report of his administration " upon the expiration of one year from the date of his appointment." Section 243, that on the settlement of such account the court should make an order *for the payment of the debts*, or, in case there were not sufficient funds in the hands of the administrator, that the decree should specify the sum to be paid to each creditor. Section 247, that if the whole of the debts should have been provided for by the order last mentioned, and paid, the court should proceed to direct the payment of legacies, and *distribution of the estate* among the heirs, legatees, and other persons entitled; but if there should be debts remaining unpaid, the court should give such extension of time as might be " reasonable " *for a final settlement of the estate.* Contingent, disputed, and immature claims were provided for, so as not to prevent a speedy settlement. (§§ 244–6.) Section 154 provided, " when," (that is to say, in view of the plainly indicated policy and intent of the system, " so soon as it shall appear that ") the personal estate was insufficient to pay the allowance to the family, and all the debts and charges of the administration, the administrator should sell real estate upon the order of the judge. It appears also that, if the executor or administrator neglected to apply for an order of sale when it was necessary, " any person interested in the estate " might make application therefor " in the same manner as the executor or administrator "—notice being given the executor or administrator. This language clearly includes the *creditors.* (§ 164.) Ever since *Beckett* v. *Selover*, 7 Cal. 215, it has been held that on an application to sell the real estate, the heir may dispute the validity of the claims on which the petition is based, although they have been allowed by the executor or administrator and Probate Judge; and that, under our system, the petition to sell real estate is a substitute for an action against the

heir, who must be cited, and has a right to be heard. As we have seen, the heir then first has his day in court, and except that, by a statutory rule of *evidence*, the "*allowance*" proves the validity of the claim *prima facie*, the proceeding is in its nature an original proceeding. It is manifest that the administrator or creditor ought not to delay an unreasonable time, since every consideration arising from the probable loss of evidence by reason of lapse of time, is applicable to a long delay preceding the petition for the sale of real estate, which is applicable with respect to *laches* in any other legal proceeding.

The Supreme Court of Michigan, in the *Matter of the Estate of Gabriel Godfrey, deceased*, 4 Mich. 314–15, after considering the question of delay in connection with peculiar provisions of the statute of the State, quote from the opinion of the Chancellor of New York in *Mooers* v. *White*, and add: "Applying the rule contained in the above citation—and its soundness, we think, cannot be controverted—we find no difficulty in dismissing the application (for the sale of real estate) on the sole ground of *laches*, without reference to the interests, claims, or liabilities of either the creditors or the different persons who, at different times, have represented the interests of the estate." In the same case it is said: "The power of the court to grant license to sell real estate, in cases of this character, is always discretionary, and it will never be exercised in any case when, by so doing, substantial injustice will be done, or, more properly, when substantial justice does not require it; and the application should be made within a reasonable time." It would be the extreme of hardship, if not of injustice, to allow, at this late day, the heirs and their grantees to be disturbed in the quiet and peaceable possession of the property in question. If the Statute of Limitations does not apply in this case, nevertheless, in the exercise of this discretionary power, we are not to overlook the evident intention of the law. By the statutes above cited, it clearly appears that the intention of the Legislature was to compel the executor or administrator, when it became necessary, to resort to these means to settle up an estate, to move at his earliest convenient opportunity."

Under our law, no action can be maintained against the heir for any debt of the ancestor, whether *specialty* or otherwise,

and every claim against an estate must be presented to the executor or administrator, as required by the Code of Civil Procedure, or it is forever barred. (Sec. 1493.) And such has been the law since the adoption of the Probate Act of 1851. When the liability of the heir to an ordinary suit by the creditor has continued, inasmuch as the heir has the right to set up the Statute of Limitations as against an action brought directly against him, he retains the right to assert the bar of the statute against an application by an executor or administrator for the sale of real estate in the Probate Court—since the "allowance" by the executor or administrator does not convert a simple promise into a *specialty*, nor amount to an admission on the part of the heir such as will take the claim out of the Statute of Limitations, nor in any other way affect the rights of the heir, beyond making the allowance *prima facie* evidence of the validity of the claim. · (*Ferguson* v. *Broome*, 1 Brad. 19.) But while, under our system, the Statute of Limitations may not apply, every consideration arising from the evident intention of the statute that proceedings for the settlement of the estate should progress with all reasonable dispatch, and that the Probate Judge should employ a discretionary power to deny a petition for the sale of real estate where unreasonable delay has occurred, should have full force and vigor. These considerations should have the same influence—whatever the machinery provided by statute—whenever the intent referred to is made manifest by the language of the law. When from the statute it appears to be the duty of the executor, or administrator, or *creditor*, to apply as soon as conveniently may be, for the sale of real property—no specific period being prescribed within which the application must be made—the Probate Court, from the very nature of the trust confided to it, must determine the question of reasonable time. "So far as the express letter of the law stood, the proceeding might be commenced at any time. It was evident, therefore, that unless some equitable restriction was imposed upon the exercise of so broad a discretion, the power of the creditor, through the medium of the personal representative (or directly) to reach the real estate, constituted, in the vigorous language of Chancellor Kent, a 'hidden and tremendous lien' of the most dangerous character." (*Ferguson*

v. *Broome, supra.*)  Fourteen years was declared to be "an unreasonable length of time" to delay making the application. (*Jackson* v. *Robinson,* 4 Wend. 442.)  It would appear that the limitation of three years, within which an application must be made, provided by the Revised Statutes of New York, was imposed "in conformity to the suggestion of Chancellor Kent, in 6 John. Ch. 360." (*Ferguson* v. *Broome,* citing reviser's notes.)

It may be freely admitted that purchasers of real property from the heirs of a decedent, under our system in California, always have the opportunity (when the estate has not been finally closed) of ascertaining the existence of every claim which may be made a lien upon the real estate, and collected by a sale thereof.  As every claim not presented and allowed by the executor, or administrator, or judge of probates, is *barred,* the purchaser may know by reference to the records of the Probate Court the condition of the estate in that regard.  But while this is true, the pressing urgency of the provisions of the statute to which we have referred, and which is indicated by the whole scheme established for the settlement of estates of decedents, calls for a construction which as clearly requires the application for the sale of real estate to be made "as soon as conveniently may be," as if those terms had been employed in the law.  Nor does the fact that the heirs do not call for an accounting in the Probate Court, and for sale of real estate if necessary, constitute any excuse for the delay of the administrator or creditor.  The proceeding for the sale of real property is hostile to the heirs, and there is no principle which makes it *their* duty to initiate a suit adversely to themselves, the failure to commence which by the proper party may result to their benefit.

The laws of *Iowa* provide that claims not filed and proved within one year and a half of the giving of notice of the appointment of an executor, were forever barred, unless the claim was pending in court, or unless certain circumstances entitled the claimant to equitable relief.  The Supreme Court of Iowa held, that, as a general rule in that State, an application of the executor to sell real estate of the decedent for the payment of debts would not be sustained unless made within *eighteen months*

from the time the executor gave notice of his appointment, un-unless the peculiar circumstances of the case are of such character as to make it the duty of a Court of Equity to depart from this general rule, and that, under such circumstances, the application must be made within a reasonable time. The Court added : " If we could even hold that the circumstances are such as would justify the extension of the time for making the application beyond the lapse of eighteen months, still we are of the opinion that the delay of eleven and one-half years, without excuse or explanation, is unreasonable." (*Mc Crary* v. *Tasker*, 41 Iowa, 255.) By the Supreme Court of Illinois, it was held, that, while there was no statute of limitations barring proceedings by administrators for the sale of lands to pay debts, yet the right to sell the real estate of a deceased person for such purpose would be barred after the lapse of seven years, unless the delay could be satisfactorily explained ; and in this respect each case must rest upon its own peculiar facts. ( *Wolf* v. *Ogden*, 66 Ill. 224.)

A full examination of the foregoing and other cases, in which it was admitted that the Statute of Limitations did not apply, will show it to have been held, nevertheless, from the very nature of the proceedings and the character of the duties imposed upon courts where the estates of deceased persons are administered, as well as from the various provisions of the statutes of different States, which—however they may differ in detail—are all impressed with an evident legislative intent that the proceedings shall be promptly inaugurated and continuously prosecuted, without unnecessary delay ; that the courts of probate retain the power, and it is their duty, to refuse an order granting leave to sell, when the delay amounts to *laches*.

We can see nothing in the facts appearing in the findings which can be held to excuse the delay of seventeen years which occurred in this case. In respect to all the claims allowed, except the judgment in favor of Elliott Reed, no reason whatever appears why, if the personal property was insufficient, an application should not have been made many years ago for the sale of real property. In respect to the judgment, it is found that on the 21st of March, 1861, about seventeen months after the allowance by the Probate Judge, E. P. Reed, after first obtain-

ing leave of the Probate Court so to do, caused a writ of execution to be issued out of the District Court upon the judgment in favor of Elliott Reed, directed to the Sheriff of San Diego County. Under and by virtue thereof, and on the 10th day of May, 1861, said Sheriff sold, to satisfy said execution, interest, and costs, all of the undivided third of the Cuyamaca Rancho—said Reed becoming the purchaser; that he bid the full amount of the judgment, interest, and costs due at the time of sale; and the Sheriff returned the execution fully satisfied. That afterward, September 10th, 1862, the Sheriff executed and delivered to E. P. Reed, as such purchaser, a sheriff's deed therefor. That doubts having arisen as to the validity of the execution and sale thereunder, the present administrator, and E. P. Reed, in August, 1876, submitted an agreed case to the Twentieth District Court, which Court on the 6th day of October, 1877, adjudged and decreed that said execution was issued without authority of law, and that the sale thereunder was *void*.

It would seem that the circumstances which can excuse a delay, otherwise unreasonable, must be such as arise out of the peculiar condition of the administration, and such as have prevented the executor or administrator from moving more expeditiously. Here the fact alleged, that the agent of the creditor mistook, for several years, the law of the land as to his right to proceed by execution upon the judgment of the District Court, can by possibility constitute no excuse for his failure to proceed in the Probate Court. It is a matter which has no connection with the progress of the administration, and his error as to the law may have coexisted, and did coexist for at least sixteen years, with the full power and opportunity to petition for a sale of the real property in the Probate Court. In any event we cannot conceive of a case in which a delay to petition for more than seventeen years after qualification of an administrator could be held to be reasonable.

We have not found it necessary to inquire whether any provision of our Statute of Limitations is applicable, in terms, to a proceeding of the character we have been considering. Neither of the counsel has claimed this; but on the contrary it was assumed by both that the statute did not apply. Since, however, it has been decided that a proceeding in the Probate Court is in

the nature of an original proceeding against the heirs, and such proceeding is simply statutory, and is not analogous to an action conducted according to the course of the common law, it may be perhaps " a special. proceeding of a civil nature," and as such, subject to an appropriate section of the title of the Code of Civil Procedure which treats of limitations. (Code Civ. Proc. § 363.) It is not necessary to determine the question, however, and we content ourselves with saying that the delay preceding the filing of the petition was so great, in the absence of any satisfactory explanation, that the Probate Court ought to have dismissed the application or denied the order prayed for, and it was error to entertain the petition and to grant the order.

The order directing the sale of real estate, of the 24th day of November, 1877, is reversed, and the Court below is directed to enter an order dismissing the petition for the sale, or denying the order therein prayed for.

Ross, J., and McKEE, J., concurred.