[S. F. Nos. 5678 and 5683.   In Bank.—April 10, 1912.]

# In the Matter of the Estate of CLAUS SPRECKELS, Deceased.

WILL—RULES OF CONSTRUCTION—INTENTION OF TESTATOR.—The primary purpose of all rules to be applied in the construction of wills is to ascertain the testator's intention, not some undeclared purpose which may be imagined to have been in his mind, but the intention disclosed by the words he has used.  As an aid to the interpretation, resort may be had in cases of uncertainty, to the circumstances under which the instrument was executed.

ID.—INTENT MUST BE DECLARED EVEN IF UNLAWFUL.—Where the intent is plain, the duty of the court is to declare that intent, without regard to the consequences.  If the plan adopted by the testator for the disposition of his property cannot be given effect because it violates the rules of law, the court is not authorized to substitute for the illegal provision some other which it may suppose would have been adopted by him if he had known that the directions actually given could not be carried out.

ID.—CONSTRUCTION IN FAVOR OF TESTACY.—Where a will may reasonably be interpreted in two ways, one of which results in intestacy while the other leads to an effective testamentary disposition, the interpretation which will prevent intestacy is to be preferred.

ID.—TRUST TO CONVEY REAL PROPERTY IS VOID.—Under section 857 of·the Civil Code, a devise of real estate to trustees in trust to convey to persons named is void, where the instrument discloses an intent that the ultimate beneficiaries shall take only through a conveyance by the trustees, and that no estate or interest, other than a right to enforce the performance of the trust, is given to them.

ID.—TRUST TO CONVEY ACCOMPANIED BY WORDS PASSING TITLE DIRECTLY TO BENEFICIARY—DIRECT DEVISE.—Where a will contains, in addition to words which, standing alone, would be deemed to create a trust to convey, some expression which might be operative to pass the title directly from the testator to the beneficiary, the will should be construed as making a direct devise, and such devise will be given effect, in disregard of the words importing an invalid trust, and it makes no material difference that the direction for transfer is followed, instead of preceded, by the words indicating an intent to make a direct devise.

ID.—DIRECTION TO CONVEY TO BE DEEMED UNNECESSARY.—When words which by themselves import an unlawful trust to convey are joined with other words which are sufficient to operate as a direct devise of the interest, the direct devise is not destroyed by the fact that the testator may have attempted to provide in addition for an unlawful method of passing title.  In such case the provision for a

conveyance is to be regarded as unnecessary, except, perhaps, as convenient and additional evidence of title.

ID.—CONSTRUCTION OF WILL IN QUESTION—TRUST TO CONVEY NOT CREATED—DEVISES ARE DIRECT TO BENEFICIARIES AS TENANTS IN COMMON.—The testator by his will left all his estate which was subject to his testamentary disposition, the same being entirely community property and consisting of both realty and personalty, to trustees in trust (1), "to pay over the net annual income thereof to his wife during the term of her natural life"; (2), upon her death, "to divide said estate into three equal parts, when one of said parts shall be forthwith assigned, transferred, set over and delivered by my said trustees" to each of two of his sons, "and the same shall be and become his absolutely and forever." (3), "To pay over the net annual income derived from the remaining equal third part to his daughter during her natural life, and upon the death of said daughter, to pay over the principal of said one-third part, with all accumulations of the income therefrom, to her children then living, and so that each child shall receive an equal share thereof, and the same shall become his or hers absolutely and forever." The will further provided that children of deceased children of said daughter should take the share which the parent would have taken had he or she survived said daughter, "and the same shall be divided between said children share and share alike," and that upon the death of said daughter without child, children or grand-children her surviving, the trustees should pay over the principal of said one-third part, with all accumulations of income therefrom, to his aforesaid sons, share and share alike, "and the same shall become theirs absolutely and forever. It further provided, that if either of his said sons should not be living at the time of his death or at the time of his wife's death, then all the legacies and devises given to him should go to his lawful issue, share and share alike, "and the same shall be and become theirs absolutely and forever." The trustees were empowered to invest and reinvest the trust estate, and to sell any portion thereof, at their discretion. *Held,* that the will did not create a trust to convey, partition, or make allotments of real estate, which would be invalid under sections 847 and 857 of the Civil Code, but, properly construed, made direct devises of legal estates to the beneficiaries as tenants in common.

ID.—COMMUNITY PROPERTY—ONE HALF VESTS IN SURVIVING WIFE.— Under such will, as the entire estate was community property, an undivided half of the property was all that the testator could, and was all that he attempted to, pass by means of his testamentary disposition. The other half vested at once in his surviving wife.

ID.—DIRECTION TO TRUSTEES TO DIVIDE ESTATE—PHYSICAL DIVISION OR ALLOTMENT NOT INTENDED.—The direction in said will to the trustees to "divide said estate into three equal parts," does not require them, as a condition to the vesting of the devises in the respective devisees, either to physically subdivide the various parcels of realty owned by the testator, or to appraise the entire estate, real and per-

sonal, and allot various parts of it so as to make three shares of substantially equal value; on the contrary, and especially in view of the fact that the entire estate was community property, an undivided half of which passed to the surviving wife, so that such a physical division or allotment would be impracticable, the direction for a division into three equal parts should be construed as intended to accomplish merely a creation of equal one-third interests in the entire estate and every part thereof—that is to say tenancies in common—for his two sons and daughter, at the same moment of time, that is upon the death of his wife.

ID.—NO UNDUE SUSPENSION OF POWER OF ALIENATION—CHILD EN VENTRE SA MERE.—So construed, the will effects no undue suspension of the power of alienation upon the death of the testator's widow. As the direct devises, vesting at the death either of the testator's widow or of his daughter, are given to all of the ultimate beneficiaries, the fact that among the takers there may be a child *en ventre sa mere*, does not effect an undue suspension of the power of alienation.

ID.—MEANING OF WORD "DIVIDE."—The word "divide," in and of itself, does not import an actual physical segregation into distinct shares. It is, when used in such phrases as "to be divided between," or "divided in equal shares among," or the like, very commonly used to express an intention to give interests to persons as tenants in common. So, also, such phrases as "equal parts," or "equal third parts," or "third parts," are entirely appropriate to indicate a tenancy in common.

ID.—DIRECTION TO DIVIDE IMPOSES MERE OBLIGATION TO DELIVER—IMPLIED DUTY OF TRUSTEES, IF EXPRESSED IN WILL, DOES NOT CREATE INVALID TRUST.—The direction to the trustees to divide the estate into interests held in common, and to assign, transfer, set over, and deliver, imposed upon them merely the obligation which would rest upon any trustee, at the termination of his trust, with respect to property which then passed in undivided interests to two or more persons. It would be his duty to deliver such property to the parties entitled, and to that end to make such division as is involved in the act of turning over an undivided share. Such duties being implied, they may be conferred by the testator without violation of the provisions of sections 847 and 857 of the Civil Code.

APPEALS from a judgment of the Superior Court of the City and County of San Francisco refusing a partial distribution of the estate of a deceased person. J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

Charles S. Wheeler, Cushing & Cushing, J. F. Bowie, Nathan Moran, and W. H. Gorrill, for Appellants.

Morrison, Cope & Brobeck, P. F. Dunne, Samuel M. Short-ridge, and Wesley N. Hohfeld, for Respondents.

SLOSS, J.—Claus Spreckels died testate on the twenty-sixth day of December, 1908, leaving as his surviving heirs his widow, Anna Christina Spreckels, four sons, John D., Adolph B., Claus A., and Rudolph Spreckels, and a daughter, Emma C. Ferris. His will was admitted to probate in the superior court of the city and county of San Francisco on the ninth day of January, 1909, and letters testamentary were duly issued to the executors named, who were his sons Claus A. and Rudolph. As will appear, the will undertook to make devises and bequests to these two sons as trustees upon certain declared trusts. After the lapse of four months from the issuance of letters testamentary, Claus A. and Rudolph Spreckels, as trustees of the trusts created by the will, peti-tioned the court for partial distribution to them of a large por-tion of the real and personal property left by the testator. They subsequently filed an amended petition to the same end. To this last petition demurrers were interposed by John D. and Adolph B. Spreckels, and the court. after hearing the re-spective parties made its order sustaining the demurrers, and denying the petition for partial distribution. It appears, and the fact is recited in the order, that the testator's widow died three days prior to the signing of the order.

From the order or judgment, so made, six appeals are taken, one (No. 5678) by Claus A. Spreckels individually, one (No. 5679) by Rudolph individually, one (No. 5680) by Claus A. and Rudolph as trustees of the trusts created by the will, one (No. 5681) by Claus A. and Rudolph as trustees of the trusts created for the benefit of Emma C. Ferris, one (No. 5681) by Claus A. and Rudolph as trustees of the trusts created for the benefit of Anna C. Spreckels, and finally one (No. 5682) by Claus A. and Rudolph Spreckels as executors of the will of Anna C. Spreckels, deceased.

Involved in the first four of these appeals is a single main question, i. e., the validity, as a whole, of the trust scheme con-tained in the will. The other two appeals, No. 5681 and No. 5682, present narrower issues, turning upon the provision for the widow and the extent, if any, to which the petitioners' right to a partial distribution is affected by her death pending

the proceeding. The conclusions which we have reached make it convenient and proper to consider all six appeals in one opinion.

As a preliminary to the statement and consideration of the positions taken by the respective parties, it will be necessary to set forth the terms of the will, and to give an outline of the amount and character of the estate left by the decedent.

Omitting the attestation clause and the signature thereto, the entire will reads as follows:—

"I, Claus Spreckels, a citizen of the State of California, and a resident of the city of San Francisco in said state, now present in the city, county and state of New York, being of sound and disposing mind, and not under restraint or undue influence, do make, publish and declare this to be my last will and testament, hereby revoking all other wills by me made.

"First: I declare that all the estate, whereof I may die possessed, is the community property of my wife, Anna Christina Spreckels, and myself.

"Second: I hereby give, devise and bequeath unto my trustees hereinafter named, all my estate, real, personal and mixed, of every nature, kind and description, wherever situate and however held, which is or may be subject to my testamentary disposition at the time of my death, to have and to hold the same, in trust, nevertheless, for the uses and purposes, with the powers and in the manner hereinafter mentioned, namely, to-wit:

"(a) To pay over the net annual income thereof to my wife during the term of her natural life.

"(b) Upon the death of my said wife, or upon my death if she be not then surviving, to divide said estate into three equal parts, when one of said parts shall be forthwith assigned, transferred, set over and delivered by my said trustees to my son Claus A. Spreckels, and the same shall be and become his absolutely and forever, and another of said equal third parts shall be forthwith assigned, transferred, set over and delivered by my said trustees to my son Rudolph Spreckels, and the same shall be and become his absolutely and forever.

"(c) To pay over the net annual income derived from the remaining equal third part of my estate to my daughter Emma C. Ferris of Kingswood, England, wife of John Ferris, during her natural life, upon her receipt without anticipation, and the same shall not be liable for her debts.

"Upon the death of my said daughter Emma, to pay over the principal of said one-third part of my estate, with all accumulations of the income therefrom, to her children then living, and so that each child shall receive an equal share thereof, and the same shall become his or hers absolutely and forever.

"Children of her deceased children shall, however, take the share which the parent would have taken had he or she survived my said daughter, and the same shall be divided between said children share and share alike. Upon the death of my said daughter without child, children, or grand-children her surviving, the trustees shall pay over the principal of said one-third part of my estate with all accumulations of income therefrom, to my said sons Claus A. Spreckels and Rudolph Spreckels, share and share alike, and the same shall become theirs absolutely and forever.

"Third: If my said son Claus A. Spreckels shall not be living at the time of my death or surviving me be not living at the time of my wife's death, then all the legacies and devises given to him by this will shall go to his issue, to him in lawful wedlock born, share and share alike, and the same shall be and become theirs absolutely and forever. If my said son Rudolph Spreckels shall not be living at the time of my death, or surviving me be not living at the time of my wife's death, then all the legacies and devises given to him by this will shall go to his issue, to him in lawful wedlock born, share and share alike, and the same shall be and become theirs absolutely and forever.

"Fourth: I make no provision in this will for my sons John D. Spreckels and Adolph B. Spreckels for the reason that I have already given to them a large part of my estate.

"Fifth: I hereby authorize and empower my trustees hereinafter named, to invest and re-invest the trust funds hereinbefore provided for in any securities which are approved by my said wife and by them during her lifetime, in case she survive me, and after her death, in any securities which said trustees deem best, whether the same are or are not investments to which executors and trustees are by law limited in making investments, and to change or vary investments from time to time as they may deem best. I authorize and empower my executors and trustees hereinafter named, to hold and continue in their discretion, any security in which any of my property

may be found invested at the time of my death, my intent being that they shall be absolved and discharged from the absolute legal duty of converting my estate into money, and that they shall not be liable for any shrinkage in value by reason of the exercise of the discretion hereby reposed in them.

"Sixth: I authorize and empower my executors and trustees hereinafter named in their discretion to sell and dispose of any and all of my property, real or personal, wherever situate and however held, either at public or private sale, and at such time or times and upon such terms as may seem to them meet and advisable, and to give to the purchaser or purchasers of any of my said property all deeds, bills of sale and other muniments of title which may be expedient or necessary.

"Seventh: I nominate, constitute and appoint my sons Claus A. Spreckels and Rudolph Spreckels as executors of this my last will and testament, and as trustees of any and all trusts herein created, and I direct and request that no bond or other security be required of them as such executors or trustees, or in any capacity in which they may act under this will."

It will be observed that the testator declares, in paragraph "First," that his entire estate is community property, and that, by the express terms of paragraph "Second," he undertakes to dispose of only such portion of the estate as is subject to his testamentary disposition. The amended petition for partial distribution, too, alleges that all the property owned by the testator at the time of his death was the community property of himself and his wife. Since she survived him, an undivided half of said property was all that he could, as it was all that he attempted to, pass by means of his testamentary disposition. The other half vested at once in his widow. (Civ. Code, sec. 1402.)

The estate in the hands of the executors, at the time of the filing of the amended petition, consisted of real property, of the value of over five million seven hundred thousand dollars, and of personal property worth in excess of three million six hundred thousand dollars.

The amended petition describes some nineteen tracts of real estate in the city and county of San Francisco, of the value of $5,358,460.60, and certain money, stocks, and bonds, of the value of $2,809,880.00, and asks for distribution of the real and personal property so described.

There is no question of the formal sufficiency of the petition to make out a case for partial distribution. The only doubt is whether the will gives to the trustees any estate which they may take under the laws of this state; or, in other words, whether any of the trusts sought to be created are valid. The respondents concede here, as they did below, that the trust to pay the income to the widow, during her life, is good, and it is not claimed that this trust may not be regarded as separable from the further provisions of the will, in such manner that it should be given effect without regard to the alleged void character of the other provisions. But, inasmuch as Mrs. Spreckels died before the decision on the demurrer to the petition for partial distribution, it is urged that the validity or invalidity of the life trust is immaterial. With this position the appellants in S. F. Nos. 5681 and 5682 take issue, their claim being that, in any event, the trustees are entitled to the income accruing before the death of Mrs. Spreckels, and that an affirmance of the order here appealed from will operate as a bar to a future assertion of their right to such income. We shall not stop to consider this contention, as we have reached the conclusion that the order must be reversed for other reasons. In the discussion which is to follow, we shall confine ourselves to a consideration of the provisions of the will which assume to dispose of the estate after the death of the widow.

With reference to these provisions, the argument of the respondents may be divided into three main heads: 1. It is claimed that the will devises the entire estate to the trustees in fee upon trusts to partition the same into three shares or portions of equal value, and, upon the completion of such partition, to convey two of said parts to Claus A. and Rudolph, respectively, to hold the third for the life of Emma C. Ferris, and to convey the principal of such third share to her issue, or, in default of issue, to Claus A. and Rudolph. So far as such trusts affect real property, they are, it is claimed, in contravention of the terms of sections 847 and 857 of the Civil Code, and must fall, in accordance with the rule declared in *Estate of Fair*, 132 Cal. 523, [84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000]; 2. It is urged that the real and the personal property are so bound up in a single testamentary scheme that if the provision cannot be given effect with respect to realty, the trust of the personalty must fail as well; 3. The respond-

ents contend that the trusts to be performed after the death of the widow are void with respect to both real and personal property because they involve a suspension of the absolute power of alienation beyond lives in being. (Civ. Code, secs. 715, 716.)

Prerequisite to an examination of the soundness of these contentions is a construction of the will—a determination of the intention of the testator. The rules of construction to be applied in cases of this character are well settled in this court. The primary purpose of all such rules is to ascertain the testator's intention (Civ. Code, sec. 1317),—not some undeclared purpose which may be imagined to have been in his mind, but the intention disclosed by the words he has used. (*Estate of Young,* 123 Cal. 337, 344, [55 Pac. 1011].) As an aid to the interpretation, resort may be had "in cases of uncertainty" to the circumstances under which the instrument was executed. (Civ. Code, sec. 1318; *Estate of Marti,* 132 Cal. 666, [61 Pac. 964, 64 Pac. 1071]; *Kauffman* v. *Gries,* 141 Cal. 295, [74 Pac. 846].) Where the intent is plain, the duty of the court is to declare that intent, without regard to the consequences. If the plan adopted by the testator for the disposition of his property cannot be given effect because it violates the rules of law, the court is not authorized to substitute for the illegal provision some other which it may suppose would have been adopted by him if he had known that the directions actually given could not be carried out. (*Estate of Young,* 123 Cal. 337, [55 Pac. 1011].) In other words, the court cannot, under the guise of construction, make a will for the testator in place of the one he has made. Side by side with these principles, however, goes the rule, frequently enunciated and applied in our decisions, that where a will may reasonably be interpreted in two ways, one of which results in intestacy while the other leads to an effective testamentary disposition, the interpretation which will prevent intestacy is to be preferred. (Civ. Code, sec. 1326.) "It is only," said the court in *Estate of Heywood,* 148 Cal. 191, [82 Pac. 758], "when the language actually used by the testator will admit of no other reasonable construction than that it declares an invalid trust that a court will declare this to be its effect." So, in *Estate of Dunphy,* 147 Cal. 99, [81 Pac. 317], it is declared to be "a fundamental principle that a construction of a will favorable to testacy

will always obtain when the language used reasonably admits of such construction, and that it will not be held to contain a void trust unless the invalidity of the trust be beyond question." (See, also, *Estate of Heberle,* 153 Cal. 275, [95 Pac. 41]; *Estate of Peabody,* 154 Cal. 173, [97 Pac. 184].)

Applying these rules, is the will in question to be so construed as to subject its provisions to the destructive effect of the doctrine declared in *Estate of Fair* and similar cases? (*Estate of Sanford,* 136 Cal. 97, [98 Pac. 494]; *Estate of Pichoir,* 139 Cal. 682, [73 Pac. 606]; *McCurdy* v. *Otto,* 140 Cal. 48, [73 Pac. 748]; *Hofsas* v. *Cummings,* 141 Cal. 525, [75 Pac. 110]; *Estate of Dixon,* 143 Cal. 511, [77 Pac. 412]; *Sacramento Bank* v. *Montgomery,* 146 Cal. 745, [81 Pac. 138]; *Campbell-Kawannanakoa* v. *Campbell,* 152 Cal. 201, [92 Pac. 184].) The substance of the decision in the Fair case was that our Civil Code prohibits all express trusts in real property except those specified in the four subdivisions of section 857; that a trust to convey real property is not included in any of such subdivisions, and that, therefore, a devise to trustees in trust to convey to persons named is void, where the instrument discloses an intent that the ultimate beneficiaries shall take only through a conveyance by the trustees, and that no estate or interest, other than a right to enforce the performance of the trust (Civ. Code, sec. 863), is given to them. In that case, as the court held, the language of the will was such as to compel the conclusion that the only direct gift was to the trustees, and that the only mode provided for the passing of any interest to the beneficiaries was by means of the conveyances directed to be made by the trustees. There were no words, other than the direction to convey, which indicated that such beneficiaries were to have the property at all. Their right had its birth and its sole claim to existence in the gift in trust to convey to them. If that gift fell, as embodying a void trust, there was nothing left in the will to operate as a devise of the property. And the situation was the same in each of the above-cited cases in which the Fair case was applied and followed. In none of these cases was the trust to convey accompanied or supplemented by words which could be construed as constituting a direct devise of a legal estate to the person or persons to whom the trustees were directed to convey.

But wherever the court has been called upon to consider a

will which contained, in addition to words which, standing
alone, would be deemed to create a trust to convey, some ex-
pression which might be operative to pass the title directly
from the testator to the beneficiary, the ruling has been that
the will was to be construed as making a direct devise, and such
devise has been given effect, in disregard of the words import-
ing an invalid trust. And it is not too much to say that in ex-
amining wills to ascertain whether they contained direct de-
vises, the court has been keen to search for words which might
save the testamentary attempt from failure.

*Estate of Dunphy,* 147 Cal. 95, [81 Pac. 315], was the first
of the cases illustrating this tendency. We shall not take the
space required to give even a summary of the somewhat ex-
tended provisions of the will there under consideration. It
will suffice, for the present purpose, to say that there were
provisions, as to two fifths of the estate, that property devised
to trustees should be "transferred and distributed" as directed
by a beneficiary of the income for life, and, as to another fifth,
that it should be "paid" as so directed. In each instance, the
will declared that, in default of such direction by the bene-
ficiary, the property should "go to" certain persons. The court
held that no trust to convey was created, the reasoning being
that the phrase "go to" amounted to "clear words of direct
devise," and that the prior expressions "shall be transferred
and distributed" or "shall be paid" did not "necessarily mean
that the title to the property could pass only by the trustees'
conveyance." *Estate of Heywood,* 148 Cal. 184, [82 Pac. 755],
followed shortly after the Dunphy case. It furnishes another
illustration of the desire of the court to so construe a will as to
avoid the necessity of holding that the testator had attempted
to create a trust which would be void. There the residue was
given to trustees, in trust to apply the income as directed
during the life of the testator's wife. Upon the death of his
wife, one half of the residue was to "vest absolutely" in his
daughter and the other half was to "vest absolutely" in certain
proportions in the testator's brothers, sister, nephew, and niece.
It was then provided that if the daughter should die before
the wife without child or children, "then the whole of said
residue shall be divided among my said brothers and sister
and niece and nephew in the proportions named in the last
preceding subdivision." The court construed the clause just

quoted, taken in connection with the rest of the will, as directly devising the share otherwise going to the daughter to the other relatives in the event of her death. "It is true," says the court, "that the testator might have used more apt words to disclose his intention to directly devise his estate to the other beneficiaries should his daughter die, but a declaration that it 'shall be divided' among them is by no means indicative of a different intention. If these words were used in a will free from trust provisions, they would undoubtedly be treated as words of devise."

More directly in point, and very persuasive authorities against the application of the doctrine of the Fair case to the Spreckels will, so far as the point of a "trust to convey" is concerned, are *Estate of Heberle,* 153 Cal. 275, [95 Pac. 41], and *Estate of Peabody,* 154 Cal. 174, [97 Pac. 184].

In the first of these cases the decedent had, in the seventh paragraph of his will, devised certain property situated on Spring Street in the city of Los Angeles to trustees to be held by them for the term of five years "and then the same by said trustees to be conveyed to the children of my deceased brother Martin Heberle . . . share and share alike." By the fourteenth paragraph the testator empowered his trustees to convert real estate into money by sale. The seventeenth paragraph read as follows: "That the power to sell my real estate, as set forth in the fourteenth subdivision, shall not affect my said Spring Street property, which is not to be sold, but which is to be kept and distributed to the children of my deceased brother Martin." The following quotations from the opinion will show the view which the court took of these provisions: "The trust created by paragraph seven being void in its creation, no estate as to the Spring Street property passed to the trustees. If in the will there are no other apt words disposing of the property on the failure of this trust, intestacy as to it must be the result. The trial court found those words in the seventeenth subdivision of the will above quoted, and in view of the fact that a construction which favors testacy is always preferred to one resulting in intestacy (*Dunphy's. Estate,* 147 Cal. 96, [81 Pac. 315]) it may not be said that the interpretation is not a permissible one. The seventeenth paragraph contains a direction for the 'distribution' of the Spring Street property to the children and grandchildren. While it

may be argued that the word has reference to distribution by the trustees under the trust, yet it is not a word aptly used for such a purpose, while it is apt in its application to a direct devise. It is equally open to the construction, therefore, that the distribution to the children is to be at the hands of the court. . . . The paramount idea in the testator's mind was not that the property should descend to his beneficiaries through a trust, but that, with or without a trust, they should with certainty receive property to that value from his estate." The court accordingly sustained the holding of the trial court to the effect that the decedent had not died intestate as to this portion of his estate.

In *Estate of Peabody* the clause in question read as follows: "Secondly, I do now give, devise and bequeath all my real estate (describing both real and personal property) to my executors to be transferred by them to the Womens Occidental Board of Missions . . . with the executive committee of the Womens Presbyterian Missionary Society of the Los Angeles Presbytery as trustees and managers thereof."

It was contended, as obviously it could be with great plausibility, that the will disclosed an intention to create an estate in the executors, upon the trust that it was to be by them conveyed to the Board of Missions and that such trust was void under the rule in the Fair case. The court, however, held that this was not the necessary construction of the will; that the word "transfer," at least when used by one not skilled in the use of technical legal terms, was not synonymous with the word "convey" and that the testatrix in disposing of her property "meant nothing more . . . than that the executors in their representative capacity should take possession and control of the property for administration under the laws of this state and in due course of administration should transfer it by final decree of distribution to the trustees in whom she desired that the title should vest, to be applied to the charitable uses she describes." "Thus," says the court, "the will is harmonious, no trust to convey is created and her intended disposition is valid . . ."

In the light of these decisions let us consider the terms of the will before us. We pass for the moment the direction in subdivision b of paragraph second "to divide said estate into three equal parts" and concern ourselves here and now only

with the question whether the three separate parts which, according to the contention of the respondents, are to be created by such division are directly devised by the will to the beneficiaries or are to pass to them only by and through a conveyance to be executed by the trustees. A reading of the second and third paragraphs shows that the will abounds in expressions which, under the prior decisions of this court, must be held to import a direct devise of legal estates.

In subdivision b of paragraph second, after providing for the division of the estate, the will declares that one of said parts shall be forthwith assigned, transferred, set over, and delivered by my said trustees to my son Claus A. Spreckels and *the same shall be and become his absolutely and forever.* It will not be questioned that the words in italics are apt and proper words to vest an estate by direct gift from the testator. They are identical in purport with the phrase "shall go to" which, as we have seen, is declared in the Dunphy case to show an intent to make a direct devise.

Incidentally, something may be said regarding the phrase "shall be forthwith assigned, transferred, set over and delivered," upon which the respondents found their contention that a trust to convey was sought to be created. The only one of these words which can be deemed applicable to the passing of title of real property is the word "transferred," concerning which this court has said, in *Estate of Dunphy*, 147 Cal. 96, [81 Pac. 315], that it does not "necessarily mean a passing of the title to land by a trustees' conveyance, and it would not have that meaning even if there had been a direction to the trustees to transfer." But, notwithstanding these expressions and what is said of the word "transferred" in *Estate of Peabody*, we do not doubt that the phrase "shall be forthwith assigned, transferred, set over and delivered by my said trustees," is, in and of itself, open to the construction that it calls for a conveyance by the trustees of real estate and for such mode of passing title to personalty as may be appropriate to the particular property involved. Unlike the will in the Peabody case, the one before us was not the work of an unskilled hand, and, giving all due weight to the intimations in former decisions that the word "transfer" is less significant than the word "convey" of an intent to have the title to real estate pass by deed, we may concede that, if nothing appeared

in the will but a devise to trustees in trust to "transfer" the property to certain persons, it could hardly be said that the provision was in any substantial degree different from that contained in Fair's will.

But when words which by themselves import an unlawful trust to convey are joined with other words which are sufficient to operate as a direct devise of the interest, the direct devise is not destroyed by the fact that the testator may have attempted to provide in addition for an unlawful method of passing title through trustees. In such case the provision for a conveyance is to be regarded in the manner indicated by the following quotation from the opinion of the majority of the court in *Estate of Fair:* "The case would have been different if there had been an independent devise followed by a direction to the trustees to convey to the devisees; in that case the words of devise would create an estate, and the conveyance would have been unnecessary, except, perhaps, as convenient and additional evidence of title." It can, we think, make no material difference that the direction for transfer is followed, instead of preceded, by words indicating an intent to make a direct devise. No such distinction seems to have been in the mind of the writer of the opinion in which the passage just quoted is found, for in the sentence just preceding he says that the direction to transfer and convey cannot be treated as calling for mere evidence of a title passing otherwise, because "the words do not *precede or follow,* and are not merely additional or supplemental to, any other words which, by themselves, and without the aid of the words 'to convey,' would devise any estate whatever to the asserted remaindermen." It would, we think, require some refinement of construction to say that the phrase "when one of said parts shall be forthwith assigned, transferred, set over and delivered by my said trustees to my son Claus A. Spreckels, and the same shall be and become his absolutely and forever" conveys to either the professional or the lay mind a very different meaning from "when one of said parts shall be and become the property of my son Claus A. Spreckels absolutely and forever, and the same shall be forthwith assigned, transferred, set over and delivered by my said trustees to him."

It will be observed, further, that the testator is not content with saying in the one instance "and the same shall be and

become his absolutely and forever" but the same form of words is applied to the provision for Rudolph. With an unimportant variation, it is used again in subdivision c of paragraph second in the provision for the disposition of the principal of the third part upon the death of the daughter Emma. Again, the same expression is found in the provision made for the disposition of the third part in the event of the death of the daughter without child, children, or grandchildren surviving. And so, again, it is repeated in paragraph third with reference to the disposition of the shares of Claus A. Spreckels and Rudolph Spreckels in the event that they respectively shall not be living at the time of the testator's death or at the time of his wife's death.

But this is not all. The argument that the testator intended to make direct devises to the various beneficiaries named in the will is much strengthened by other phrases used by him. Thus, in subdivision c of paragraph second, the provision for the daughter Emma and her issue or those who may be substituted for them not only contains the words of direct devise which we have already quoted, but it is marked by an entire absence of those words (assigned, transferred, etc.) which are found in the earlier part of the will and which might be deemed to indicate an intent that the title to the property should pass by conveyance from the trustees. The provision is that upon the death of Emma the trustees are "to pay over the principal of said one-third part of my estate . . . to her children then living," and similarly they are directed in the event of her death without issue living to "pay over the principal of said one-third part of my estate . . . to my said sons . . ." Here we find no words which might be held to import a direction that the legal title to real estate should be conveyed by trustees. The word "pay" is not properly applicable to the conveyance of real property and a direction to pay over such property in itself imports a direct devise to the party or parties who are, according to the testator's intent, to receive the property. (*Estate of Dunphy*, 147 Cal. 101, [81 Pac. 315].)

The same may be said of the provision in subdivision c that upon the death of Emma, the children of her deceased children "shall take" the share which the parent would have taken if surviving "and the same· shall be divided between said

children share and share alike." Here is no provision for a conveyance to the children of children. Whatever may be said of a direction to trustees to divide property among certain persons or members of a class (a point to which we shall revert hereafter), *Estate of Heywood,* 148 Cal. 191, [82 Pac. 758], is a clear authority in support of the proposition that a mere provision that property shall be divided, or shall be divided equally among certain persons amounts to ·a direct devise to those persons as tenants in common. And it is equally beyond doubt that the expression "shall take" is appropriate and sufficient to constitute a direct devise.

A further argument in support of the contention that the beneficiaries take by direct devise is afforded by paragraph third of the will. Here the testator provides that if his son, Claus A., shall not survive the testator or his wife "then all the legacies and devises given to him by this will shall go to his issue . . ." A similar provision is found with respect to Rudolph. Here the testator in referring to each of his sons speaks of the "legacies and devises given by him by this will."' On the contention of the respondents no legacies or devises are given to either of the sons by the will. Omitting any consideration of personal property, the only devise, as they construe the will, is one in fee to the trustees and the sons Claus A. and Rudolph take (Civ. Code, sec. 863) no estate or interest in the property but only a right to enforce the performance of the trust. To such a right the term devise is inapplicable. The testator in referring to the legacies and devises given to these sons undoubtedly believed he had given them legacies and devises, and the question being purely one of intent, his language must if possible be given the effect which he understood that it would have. Furthermore, it is provided by the subdivision last quoted that the legacies and devises given to each of these sons by the will "shall go" to his issue. Here again are words of direct devise. So that we find running through the entire will a succession of varying phrases each of which when used in a will has been repeatedly held to operate as a direct devise of a legal estate. The testator speaks of property which "shall be and become his absolutely and forever." He directs the trustees "to pay over the principal" of one-third part of the estate; he provides that in a certain event such part "shall be divided" between children and that

children of deceased children "shall take" the share which the parent "would have taken"; he speaks of "legacies and devises" given to his sons "by this will" and provides that such legacies and devises shall "go to" certain persons. Certainly, there is far more reason for saying that this will indicates an intent to make direct devises of legal estates to the beneficiaries than could be found in such cases as *Estate of Heberle*, 153 Cal. 275, [95 Pac. 41] and *Estate of Peabody*, 154 Cal. 173, [97 Pac. 184].

We do not overlook the argument of the respondents to the effect that the provisions of paragraph third of the will are substitutionary merely, and that they give to the issue, in certain contingencies, nothing more than the parent would have had under the provision originally made for him. The parent taking nothing because, as is contended, his only claim is under a void trust to transfer, the issue occupy no better position. The argument would have considerable weight if it were perfectly clear, without regard to the terms of paragraph third, that no direct devise to Claus A. or to Rudolph was intended. But, as we have shown, paragraph "Second" itself contains several expressions which indicate an intent to pass the property directly from the testator to the beneficiaries without the intervention of a conveyance by trustees. The meaning of the original provision for the two sons being at least doubtful, the subsequent clauses, even though they be substitutionary, may be looked to for the purpose of ascertaining the intent of the testator as disclosed by a comparison of all the provisions of his will. If, on the face of the preceding paragraph, it is open to question whether the testator designed that his sons should take an estate independently of any action by the trustees, we may be helped to a solution of the doubt by an examination of the language in which he has cast his provision for benefits to the issue of his children. The testator, it may be assumed, intended to provide a consistent scheme for the distribution of his property. It is hardly probable that he intended that a son, surviving his mother, should receive his share only through a conveyance by trustees, and that at the same time he gave direct devises to the issue of such son, if he should predecease his mother. The substitutionary clauses, therefore, containing, as they do, language which is clearly that of direct devise, throw light upon the testamentary

plan as a whole, and support the view that direct devises are given by the preceding clauses.

We conclude, therefore, that the will, on its proper construction purports to give to Claus A., to Rudolph, and to the issue of Emma, direct devises. There still remains, however, the question of what is devised to them. We are thus brought to a consideration of the various questions arising out of the direction to the trustees to "divide said estate into three equal parts" etc. Section 857 of the Civil Code, in its enumeration of the purposes for which a trust of real property may be created, does not include the division or partition of such property. If, then, the meaning of this direction is that the trustees are either to physically subdivide the various parcels of realty owned by the testator, or, as the respondents claim, appraise the entire estate, real and personal, and allot various parts of it so as to make three shares of substantially equal value, and if, as they further claim, no interest is given to either Claus A., Rudolph, or the issue of Emma until the share of each has been ascertained by such appraisal, segregation, and allotment, it follows, say the respondents, that any direct devise is of an interest which is to be ascertaained and brought into being only as the result of the exercise of a prohibited trust, and that it cannot be effective. The prohibited trust to divide is, as is argued, the very foundation and basis of the right of the beneficiaries. Even if there be a direct devise of the segregated portions (which is, of course, denied by the respondents) such devise is effective only after the completion of the division ("to divide said estate into three equal parts, *when* one of said parts shall," etc.), and is, both as to identity of subject-matter, and time of vesting, absolutely dependent upon the void trust.

On the other hand, the position of the appellants is: 1. That the direction to divide calls for nothing more than a mere theoretical or imaginary separation into equal interests in every item of the property, creating, in effect, a tenancy in common, in which view the direction would impose upon the trustees no powers other than the law would imply; and 2. That if an appraisement and allotment is called for, the direction to make it, whether a trust or a mere power, and whether invalid or valid, does not prevent the property passing to the ultimate beneficiaries by virtue of implied devises to them of undivided interests in remainder.

CLXII Cal.—19

At the outset of this inquiry, it becomes important to recall the circumstances under which the testator executed his will. As disclosed by the instrument itself, he was not in the complete ownership of any item of the property, real or personal, which was to and did pass into the possession and control of his executors. It was all community property, in which his interest was only an undivided half, and he undertook to dispose of this half, and no more. A physical partition of each parcel of land would not, therefore, have been feasible, and cannot be supposed to have been in the contemplation of the testator. Yet such subdivision, if any, would seem to be necessary if we are to give full and literal significance to the word "equal." The estate is to be divided into three "equal" parts. The parts will not be equal unless they are equal in all respects—in quantity, in character, and in value. (See *Richardson* v. *Morey*, 18 Pick. (Mass.) 181, 188.) The respondents, however, limit the requirement to that of equality in value, and contend that the trustees are to appraise the entire estate, and divide the whole into three separate portions which may be composed of entirely different constituents, subject only to the condition that the value of each part, according to their appraisement, shall be substantially the same. But this, if a permissible interpretation of the language, is by no means a necessary one. And, since the result of adopting it would be to destroy the testamentary effort, we must pass it by if we can find a different meaning, which, while fair and reasonable, will allow validity to the will. In the first place, the word "divide," in and of itself, does not import an actual physical segregation into distinct shares. It is, when used in such phrases as "to be divided between," or "divided in equal shares among" or the like, very commonly used to express an intention to give interests to persons as tenants in common. It will suffice to cite a few of the many authorities that might be referred to in support of this statement. (*Walker* v. *Dewing*, 8 Pick. (Mass.) 520; *Emerson* v. *Cutler*, 14 Pick. (Mass.) 108; *Griswold* v. *Johnson*, 5 Conn. 363; *Weir* v. *Tate*, 39 N. C. 264; Freem. Cot. & P., 2d ed., sec. 23 and cases cited.) It is likewise well settled that such phrases as "equal parts" or "equal third parts" or "third parts" are entirely appropriate to indicate a tenancy in common. (*Arthur* v. *Nelson*, 1 Dem. (N. Y.) 337; *Andrews* v. *Boyd*, 5 Me. 199.)

. There is, to be sure, a difference between a mere provision that property is "to be divided" between certain persons (as in the cases heretofore cited), and a direction that trustees shall so divide it. The respondents cite cases which, as they claim, support their contention that the words used in the Spreckels will impose upon the trustees the active duty of separating the entire estate into three distinct portions of equal appraised value, and to allot one of these shares to Claus A., one to Rudolph, and the other to themselves as trustees for Emma and those who are to take upon her death. But we think these authorities, when examined, will be found to deal, in each instance, with a form of expression substantially different from that employed in the Spreckels will. In *Hawley* v. *James,* 16 Wend. (N. Y.) 61, the will directed the trustees, at a certain time, "to proceed to divide" the residue, "as nearly as may be, into twelve equal parts," and to "allot and distribute the same." These were, besides the words "as nearly as may be" and the direction to "allot and distribute," various other expressions showing that an actual segregation of shares was contemplated. *DeKay* v. *Irving,* 5 Denio, (N. Y.) 646, specifically directed that all the property "shall be valued in one united valuation, to be made by appraisers . . . and the aggregate amount of such valuation shall be divided into five equal parts, and so much of the said aggregate estate as shall be equal in value to one of said five parts shall go to each of my children . . . etc." It was further directed that specific property should be included in certain portions. Certainly there could be no doubt of what the testator meant by these elaborate provisions. *Cooke* v. *Platt,* 98 N. Y. 36, is somewhat closer to the case at bar, but even there the language pointed more clearly to a physical partition than that here found. The will gave property to trustees, in trust "to divide and distribute my estate, or its proceeds, . . . to and among my four children (naming them) in equal proportions." *Lord* v. *Comstock,* 240 Ill. 492, [88 N. E. 1012], is strongly relied on by respondents in support of their position that the entire fee was intended to be vested in the trustees, and was necessary to enable them to make the division. But there the will plainly declared an intent that an actual segregation of the estate into separate parts should be made, for it provided that upon the death

of one of the life tenants, her share of the income should go to her heirs "until one half of the principal of my estate, as it shall then be, can be made over to them, the said trustees taking such time as they shall think best for the interest of all concerned in making division of said principal." The will considered in *Story* v. *Palmer*, 46 N. J. Eq., 1, [18 Atl. 363], in addition to provisions like those in the will before us, expressly gave power to the executors to "make all divisions and partitions of my real and personal estate, or the proceeds thereof." *Fischer* v. *Butz*, 224 Ill. 379, [115 Am. St. Rep. 160, 79 N. E. 659], involved a will which empowered the executors to "sell, convey, mortgage or partition any part or all of my estate for the purpose of settlement thereof," a form of words, which, in connection with the rest of the will, excluded the idea that tenancies in common were intended. *Guilbert* v. *Guilbert*, 68 Misc. Rep. 405, [124 N. Y. Supp. 564], was a case in which the devise was upon trust to set apart one half of the residuary estate, "as nearly as the same, in the judgment of my executors, can be set apart or apportioned." This clearly gave a discretionary power to segregate specific property as one half of the residue. In *Potter* v. *Eames*, 70 Misc. Rep. 147, [126 N. Y. Supp. 787], we again find the phrase "as nearly as may be" in connection with a direction to trustees to "divide into two equal separate parts or portions" and the court lays stress upon these words in announcing its conclusion. *Manice* v. *Manice*, 43 N. Y. 303, is a case strongly relied on by both parties, more particularly with reference to the question of devise by implication. For our present purpose, it will suffice to say that the testator provided an elaborate scheme for appraisal, and a division into twelve equal parts, of "the aggregate amount of such personal and real estate." One other case cited by respondents may be noted. It is *Boston S. D. & T. Co.* v. *Mixter*, 146 Mass. 100, [15 N. E. 141]. The testator, by his codicil, gave one fourth of his estate to a trust company, the income to be paid to his daughter, and "at her death I direct that said estate so left in trust shall be divided among her children, share and share alike, giving to each child . . . one share." It was held that because a division was to be made, the entire estate was in the trustee. It will be observed that the will does not provide that the trustee is to make the division, and it would seem,

accordingly that, under the great weight of authority including one case in our own state, the direction that the property should be divided might well have been held to be a direct grant of tenancies in common. (*Estate of Heywood,* 148 Cal. 191, [82 Pac. 758]; *Potter* v. *Eames,* 70 Misc. Rep. 147, [126 N. Y. Supp. 787].)

None of these cases, then, is authority for the proposition that a mere direction to divide an estate into three equal parts imports a physical partition of the property, or a valuation and apportionment into heterogenous shares of equal appraised value.

It may be remarked that many New York cases use expressions concerning "division" or "severance" of trust funds or estates in a sense that might be misunderstood if due regard were not had to the New York statute limiting restraints on alienation. The statute of that state prohibits the creation of a future estate which may suspend the absolute power of alienation for a longer period than during the continuance of not more than two lives in being at the creation of the estate. Where, therefore, an estate is devised for the benefit of several persons during their lives, it is often essential to the validity of the disposition that the interest of each be severed from the rest, so that, through considering such interest by itself, the suspension of the power of alienation shall not exceed the duration of two lives. But it is not necessary to this end that there should be any physical division. "All that is requisite is that the intent to have the estate contemplated as theoretically divided into separate parcels or portions should appear." (Chaplin, Susp. of Power of Alien'n, sec. 217.) Instances of such supposed separation are found in many cases in which there was no direction to divide, but merely a provision for enjoyment "in equal shares," or other words indicating tenancies in common. (*Tucker* v. *Bishop,* 16. N. Y. 402; *Savage* v. *Burnham,* 17 N. Y. 561; *Everett* v. *Everett,* 29 N. Y. 39; *Hoppock* v. *Tucker,* 59 N. Y. 202; *Matter of Verplanck,* 91 N. Y. 439.) The court of appeals had no difficulty in reaching the same result where the will expressly provided for a setting apart of an *"undivided* one-fourth part" of the residue. (*Vanderpool* v. *Loew,* 112 N. Y. 167, [19 N. E. 481].) On the other hand, where a will devised an estate to trustees, in trust "to divide my estate into three equal shares, one to be held in trust

for each of my children during life, and after death to be disposed of as follows . . . etc.," the court treats the language as similar in effect to that used in such cases as *Tucker* v. *Bishop,* 16 N. Y. 402; *Savage* v. *Burnham,* 17 N. Y. 561, and *Hoppock* v. *Tucker,* 59 N. Y. 202, citing these cases in support of the statement that "the authorities abundantly sustain devises and bequests in this form." (*Moore* v. *Hegeman,* 72 N. Y. 376.) In the case last cited, the form of words was substantially the same as the part of the Spreckels will now under consideration. If such words called for a physical segregation of the estate, whether by partition, or by appraisement and allotment of shares of equal value, the severability of the trusts would have been apparent, and the validity of the disposition could have been sustained on even clearer ground than that applied to cases where the will directed a mere theoretical segregation into undivided interests. Yet it did not, apparently, occur to the court that a simple direction to "divide into three equal shares" meant anything different from a direction to hold for beneficiaries "in equal shares."

Of the many cases cited by learned counsel in their exhaustive briefs, we may briefly notice one or two in addition to those already discussed. *Thompson* v. *Hart,* 58 App. Div. 439, [69 N. Y. Supp. 223], is strongly relied on by respondents. But the decision, when examined as a whole, seems to bear more strongly against their position than in its favor. There the devise was to trustees "1st in trust to divide the same into five equal parts or shares, and to allot to my children . . . each one of said five parts or shares; 2nd. As to each of such parts or shares, to continue seised of the same for and during the life of the child to whom such part or share is allotted, upon the trust . . . to apply the net income, etc. . . . If such child leave no lawful issue then surviving, then to divide, distribute and pay over the said capital and accumulations in equal portions to and among the children then living of any surviving brothers or sisters." The provision (1st) to divide and allot was given a construction similar to that for which the respondents contend here. But of the later provision (2nd) for the disposition of the property upon the death of a child ("to divide, distribute and pay over in equal shares") a provision not unlike the direction to divide in the Spreckels will, the court says that it must be treated as a

devise of remainders over to grand-children, and that it "gave them estates in fee as tenants in common."

*How* v. *Waldron*, 98 Mass. 281, involved the construction of a will which devised property to trustees and provided that the property at a certain time should be conveyed to testator's children, the same to be equally divided among them. The will did not in terms provide that the division was to be made by the trustees, although the language was fairly open to the construction that this was the intent. It was held that the duty of making partition was not imposed on the trustees, but that a conveyance to the children in common, in equal proportions, would answer the intent of the testator. *Farrow* v. *Farrow*, 12 S. C. 168, deals with a will which is somewhat similar, and declares a like conclusion. The following passage from the opinion is significant: "It seems to be thought, however, that the division of the property, after the death of John, is a part of the trust. The language of the will does not sustain such a view; but if it did, then the testator has himself done the work by saying 'to be equally divided' and has thus left nothing for the trustee to do." It might well be conceded that a devise to trustees, in trust to divide the property into three equal parts, when one of said parts shall be transferred by said trustees to A, another to B, and the third to C, is, in and of itself, open to the construction that a partition of the property into separate individual holdings is contemplated. This may, indeed, be the more obvious construction. But when, as here, the interest of the testator is only an undivided one half, and a segregation of such interest into estates in severalty is impossible without the concurrence, either voluntarily or as the result of a bill for partition, of the owner or owners of the other undivided half, it becomes clear that this could not have been the intent. Accordingly, as we have already suggested, we find the respondents contending that the provision calls, not for a partition in kind, but for an appraisement of the corpus of the entire estate, real and personal, and for an allotment of properties, selected by the trustees, to the beneficiaries, with no restraint on the discretion of the trustees with respect to the kind, character, or amount of property that shall compose the respective shares other than that the value of each shall be the same. But this is importing into the will, and that for the purpose of destroying it, language which

the testator did not use. He directed his trustees to divide his estate into three equal parts—not to divide it "as nearly as may be, into twelve equal parts," and "to allot and distribute the same" (*Hawley* v. *James,* 16 Wend. (N. Y.) 61), nor that the trustees should make over "one half of my estate, as it shall then be, taking such time as they shall think best for making the division" (*Lord* v. *Comstock,* 240 Ill. 492, [88 N. E. 1012]) nor that the property "shall be valued in one united valuation . . . by appraisers, and the aggregate amount of such valuation shall be divided." (*DeKay* v. *Irving,* 5 Denio, (N. Y.) 646.)

Furthermore the will does not stop with a mere direction that the trustees shall divide the estate into three equal parts, when one of said parts shall be transferred to A, another to B, and the third to C. After providing for the passing of "one of said parts" to Claus A., the testator, in disposing of the rest of the property abandons the simple phrase "one of said parts" and declares that another of said *equal third* parts shall be transferred to Rudolph and "the remaining equal third part" shall be retained for Emma. The term "one of said parts" would be entirely apt to signify a segregated portion representing in value a third of the appraised value of the whole. But an "equal one-third part" means, according to the usual understanding, an undivided interest. There would have been no occasion for the testator to recur to this form of words if he had understood that Rudolph and the trustees for Emma were to have parts or shares which resulted from a segregation. Such parts or shares would not, strictly speaking, be equal one-third parts.

The respondents suggest the supposed absurdity involved in saying that a direction that the trustees are to "divide" means that the process is to result in the interests being "undivided." But the same criticism could be made of every case in which a provision that property shall be divided has been held to create tenancies in common. Where there is a tenancy in common, the interests of the respective owners, while attaching to the entire property, are separate and distinct from one another. (Chaplin, Susp. of Alien'n, sec. 180) In that sense the ownership of the property is divided, while the physical property itself is not.

There are further reasons against the construction that the

trustees were to appraise the entire estate, separate the same into distinct shares of equal value, and allot such shares to or for the respective beneficiaries. In any case such a valuation and separation would require some time, and where, as here, a vast and complex estate was involved, a considerable time would necessarily be consumed. Now, on the contention that during this period the entire fee was in the trustees, and that until the completion of the valuation, segregation, and allotment (or, as the respondents assert, until a conveyance) nothing would vest in the beneficiaries, some very peculiar results would follow. In the first place, the substitutionary provisions contained in paragraph "Third" take effect in the event of the death of Claus A. or Rudolph, respectively, before the death of the testator's widow. There is no provision for the issue of either if he dies after his mother and before the completion of the separation into shares. In case of such death the will would, therefore, on respondent's construction, fail to dispose of the one third which would have gone to the son so dying. His estate does not take, because no interest has vested in him. His issue do not take, because the contingency upon which they were to take has not occurred. So there would be an intestacy as to this portion of the estate—a result which is to be avoided if possible.

Again, on this construction, there is no provision for the payment of income to the testator's daughter pending the appraisal and division into shares—a result which can hardly be supposed to have been in accordance with the testator's intent.

It seems probable, therefore, that the testator contemplated that the division of his estate, the receipt of two thirds thereof by his sons Claus A. and Rudolph, and the commencement of his daughter's receipt of the income of one third, should all coincide at one moment of time—that of the death of his wife. This could occur only if the direction for a division into three equal parts were intended to accomplish merely a creation of equal one-third interests in the entire estate and every part thereof—that is to say, tenancies in common.

On this interpretation, which appears to us, in view of the scope of the entire will, to be, at the least, as consistent with the language used as is the interpretation of respondents, there can be no objection, under sections 847 and 857 of the Civil

Code, to the validity of the dispositions made. The estate is devised to trustees in trust to pay the income to the wife for life (Civ. Code, sec. 857, subd. 3) ; upon her death one third of the estate is devised to Claus A., or, if he be not then living, to his issue; another third to Rudolph or his issue, the remaining third rests with the trustees upon the valid trust to pay the income to Mrs. Ferris during her life, and upon her death, this third goes, by virtue of the terms of the will itself, to her children and grandchildren, or to Claus A. and Rudolph. The trustees, under the familiar rule, take only such estate as is "commensurate with the necessities" of their office. (*Morffew* v. *San Francisco & S. R. R. Co.*, 107 Cal. 495, [40 Pac. 810].) A fee in them was not required for the performance of the duties imposed upon them by the provisions which we have considered. All that they required was an estate in the entire property for the life of Mrs. Spreckels, and a further estate in one third for the life of Mrs. Ferris. The powers of investment and reinvestment given by the fifth paragraph of the will, and the power of sale, given to the executors and trustees by the sixth paragraph, being purely discretionary, do not make it necessary that the trustees should be invested with the fee. (*Morffew* v. *San Francisco & S. R. R. Co.*, 107 Cal. 587, [40 Pac. 810].)

If these views be correct, the direction to the trustees to divide the estate (i. e., into interests held in common) and to assign, transfer, set over, and deliver, imposed upon them merely the obligation which would rest upon any trustee, at the termination of his trust, with respect to property which then passed in undivided interests to two or more persons. It would be his duty to deliver such property to the parties entitled (*Estate of Dunphy*, 147 Cal. 99, [81 Pac. 317]), and to that end to make such division as is involved in the act of turning over an undivided share. Such duties being implied, they may be conferred by the testator without violation of the provisions of sections 847 and 857 of the Civil Code (*Estate of Heywood*, 148 Cal. 191, [82 Pac. 758].)

It is of no consequence, in this inquiry, whether the interest given to the issue of Mrs. Ferris is, prior to her death, vested or contingent. Nor need we undertake to define, in technical terms, the nature of the interest of any beneficiary. It is sufficient to say that all such interests are directly devised by

the terms of the will, and that such of them as did not vest at the death of the testator, have vested at the widow's death, or will necessarily vest at the death of the daughter.

The construction which we have put upon the will makes it unnecessary to consider the soundness of appellants' contention that, even if the direction to divide be construed as respondents would have it, the will nevertheless contains direct devises by implication to the persons intended by the testator to be his ultimate beneficiaries.

Having reached the conclusion that valid dispositions of the realty are made, there is no occasion to examine the point that the supposed invalidity of the trust with respect to the realty carries with it, as a part of a single scheme, the failure of the provisions, in so far as they affect personal property.

Nor need we give extended consideration to the contention that the power of alienation is suspended beyond permissible limits. The argument is based on the construction that the estate is, after the death of the widow, vested in the trustees for the purposes of division and transfer during a term not measured by lives in being. No further answer is required than to repeat that as we read and understand the will, it does not give the estate to the trustees during any such term. Of course, if direct devises, vesting at the death of Mrs. Spreckels, or of Mrs. Ferris, are given to all of the ultimate beneficiaries, the fact that among the takers there may be a child *en ventre sa mere* does not, as the respondents concede, effect an undue suspension of the power of alienation.

It follows that the will created valid estates in the trustees and that the demurrers to their amended petition should have been overruled.

The judgment appealed from is reversed.

Shaw, J., Angellotti, J., Lorigan, J., and Melvin, J., concurred.

Rehearing denied.