---

(101 App. Div. 550.)

### In re WATSON et al.

(Supreme Court, Appellate Division, First Department. February 24, 1905.)

EXECUTORS—ACCOUNTING—PAYMENT OF WIDOW'S CLAIM.

> On a reference by the surrogate, the widow's claim against her husband's estate for property advanced to him was allowed on her testimony (her competency to testify as to transactions between herself and her deceased husband, under Code Civ. Proc. § 829, not being raised), and the testimony of W., one of the executors, who had been testator's private secretary and business manager, and who was familiar with the nature and merits of the claim. It also appeared that, if her claim had not been allowed, the widow would have contested the validity of testator's will. The judgment on the claim having been paid, the executors charged the same to the estate, and on their judicial settlement the amount so paid was surcharged to their account; W. being excluded as a witness as a person interested, and the testimony of the widow being given little weight because she was incompetent when testifying in support of her claim before the referee. *Held*, that the acts of the executors should not be characterized as fraudulent, collusive, or negligent, in failing to resist the widow's claim more stubbornly, and that a new hearing of their account should be had before another referee.
>
> Laughlin and Patterson, JJ., dissenting.

Appeal from Surrogate's Court.

Thomas Watson and others, executors of the estate of Joseph Corbit, deceased, presented their final account for judicial settlement, and from the judgment rendered they appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Henry A. Forster, for appellants.
Milton E. Robinson, for respondents Jane Bunnell and others.
James H. Marsh, for respondents Ellen Patterson and others.

O'BRIEN, J. The facts are sufficiently stated in the opinion of Mr. Justice LAUGHLIN. The rule is settled that, where inferences are equally consistent with innocence or guilt, equally consistent with good faith or bad, or equally consistent with the view that one upon whom a duty is placed has or has not performed it, we are required to draw those inferences which are consistent with innocence, with good faith, with diligence and performance of duty, rather than the opposing inferences. I think that, without doing violence to any of the inferences that should fairly be drawn from the facts surrounding the obtaining and paying of the judgment by the executors, an argument could be built up in support of the view—equally as cogent and logical as that presented against it—that, so far as the executors are concerned, there is no reason for holding that by any collusion with the widow, or

through any fraud upon the estate of which they are trustees, they entered into any arrangement or were guilty of bad faith, or were negligent in permitting the judgment to be obtained.

It must be conceded that there was a question as to whether the widow had or had not a valid claim against the estate. She had asserted it, and was engaged in pressing it; and, in addition, she had a right and had shown an inclination to contest the validity of the will itself. The executor Watson, who had been the private secretary and business manager of the testator, and who was entirely familiar with the merits of the claim, as well as what were the chances of success, had the widow contested the will, is not to be charged with bad faith or want of diligence if, in his best judgment, he concluded that it would be better to avoid the contest of the will, and pay the claim of the widow if it could be established. To that end, the claim was rejected by the executors, and afterwards referred; and it is because the attorney for the executors did not object to the widow's testifying to personal transactions between herself and her deceased husband which were incompetent under section 829 of the Code of Civil Procedure, that the charge of negligence is made.

The executor Watson was examined as a witness on the reference to prove the widow's claim, and his testimony tended to establish its validity. This testimony was competent when given, and was sufficient to sustain the validity of the widow's claim. On this accounting, however, wherein the good faith of the executors in paying the claim or judgment is brought in question, Watson's testimony was excluded, upon the ground that it is incompetent, under section 829 of the Code, although concededly competent when given on behalf of the widow on the reference to prove her claim.

The testimony of the widow upon this accounting of the executors was received, but, as appears from the report of the referee, the proceedings had upon the hearing, and the discussion by him in his final opinion, no weight was attached to it, because, as suggested, the testimony which she had formerly given upon the reference to establish her own claim was then incompetent. In this record, therefore, we have these anomalies: That the original claim of the widow was sustained by her own testimony, which should have been excluded because incompetent, and by the testimony of the executor Watson, who was on that proceeding a competent witness, while upon the subsequent accounting of the executors it was held to be an invalid claim, as the referee rejected the testimony of Watson because it was then incompetent, and rejected the testimony of the widow as of little or no weight because formerly incompetent. Thus the executors are "between the devil and the deep sea," and it cannot be that these inconsistent rulings on evidence are right. We are of opinion that, as the widow was a competent witness upon this hearing, the executors were entitled to have her evidence received, and to have the same fairly considered and weighed, and, if it established that the claim which she enforced was a just claim, the executors would be protected in the payment of it. As her testimony appears to have been arbitrarily rejected by reason of her former incompetency, the executors have been placed in a position

of being unable to establish the validity of the claim, even though it exists as a fact, and of which they had competent evidence at the time of its payment.

It would seem to be a harsh and unjust rule to apply to surcharge the executors with this judgment. It is only, as said, by resolving against the appellants inferences equally as consistent with their good faith and honesty as with bad faith and fraud, that the conclusion can be reached that the claim of the widow, which was reduced to judgment, and which was admittedly paid by the executors, is not a proper credit to allow them. The principal argument in support of this finding is that their attorneys upon the reference were not sufficiently astute, and did not avail themselves of the advantage which, under section 829 of the Code, they possessed, of keeping out certain testimony which was given in support of the widow's claim. Taking the then situation from the executors' standpoint, there was a fair question as to whether the widow's claim was honest and valid. They required her to establish it before a referee, and the reason why a more stubborn contest was not made is furnished by the testimony of the executor Watson, who believed it to be a good claim. After it was proven, the executors, by paying it, avoided the contest of the will. Are they to be judged upon the basis of the fuller knowledge of all the facts which they now possess, and which now appear, rather than upon the knowledge and the facts which they possessed at the time when the widow's claim was presented? I think their acts are to be judged in the light of the knowledge which they possessed when they paid the claim, and, so judged, I do not think they can be justly characterized as fraudulent, collusive, or negligent; but, on the contrary, though they may not have acted wisely, and through their judgment, as shown by subsequent events, may have been faulty when they exercised it, I believe they acted in good faith and honestly.

The decree should be reversed, and a new hearing had before another referee, with costs to appellants to abide the event.

VAN BRUNT, P. J., and HATCH, J., concur. PATTERSON, J., dissents.

Appeal by executors of Joseph Corbit from so much of the decree of the surrogate judicially settling their accounts as surcharges them with $12,754.82 principal and $937.17 interest, and surcharges their account in other respects, and as reduces their commissions. The executors filed their accounts, and applied for judicial settlement. Objections having been filed, a referee was appointed to examine the accounts and determine the questions arising, and report. The decree follows and confirms the report, and, upon further evidence taken before the surrogate, fixed the commissions of the executors.

LAUGHLIN, J. (dissenting). The principal item surcharged is a judgment for $10,423.55 recovered by the widow of the testator. It was recovered on a reference by the surrogate under section 2718, Code Civ. Proc., of a claim filed by her against the estate which the executors rejected and consented to refer. The claim was for $3,000

alleged to have been advanced by her to her husband in January, 1896, and for $6,000, the alleged value and avails of a farm in Plainfield, N. J., alleged to have been intrusted to him for disposal, making $9,000, which, it is stated in her claim, "were so intrusted to said Joseph Corbit for investment, and to be dealt with by him for" her benefit, less $1,500, the value of the equity in property which he transferred to her, leaving a balance of $7,500. The testator was 72 years of age when he married, and was conducting a real estate and brokerage business in the city of New York under the name of J. Corbit & Co. He had for some years left the management of his business, including his private and business bank account, almost exclusively to the appellant Watson, his confidential agent and bookkeeper, whom he appointed one of his three executors.

The judgment was conclusive on the executors and against the estate until annulled for fraud or collusion, or vacated by the Supreme Court; and, with the consent of the surrogate, execution could be issued thereon against the personal estate, or it would have to be allowed on distribution. Code Civ. Proc. §§ 1825, 2743. But on the accounting the executors could be charged with the amount of the judgment upon proof that the claim was in fact invalid, and that they were guilty of negligence or collusion in defending the estate against it. Matter of Saunder's Estate, 4 Misc. Rep. 28, 23 N. Y. Supp. 829. The correctness of that part of the decree surcharging the executors with the judgment and interest thereon therefore depends upon whether it has been shown both that the claim was invalid, and that the executors were guilty of negligence or collusion in allowing a recovery thereon; and the burden of establishing these facts was on the contestants. If the claim was valid and enforceable, they could not be surcharged therewith, even though they were guilty of negligence or collusion in allowing the recovery of the judgment; but, if it was invalid, they were properly surcharged with the judgment and interest if they did not employ a competent attorney to defend the estate, or did not inform him of all the material facts within their knowledge or discoverable by reasonable diligence, and did not exercise due care in having the same presented to the court. In the absence of fraud or collusion, if they employed a competent attorney, and in good faith took and acted upon his advice, they should not be held responsible for his failure to object to incompetent evidence, or to present competent evidence which they fully brought to his attention. It appears that they were represented by an attorney on the hearing before the referee to whom the claim was referred. The widow, however, was permitted to testify without objection in support of her claim to personal transactions between herself and her husband. The executor Watson, a competent witness, also gave material testimony tending to support her claim; but he was not fully interrogated concerning all the material facts within his knowledge, and, without the incompetent testimony of the widow, her claim, as to the $3,000, at least, was not established.

Upon the hearing before the referee on the accounting, some of the material testimony given by Watson before the referee on the

hearing of the widow's claim was received, and afterwards stricken out as incompetent, under section 829 of the Code of Civil Procedure. I am of opinion that it was incompetent. The widow's claim had then merged in the judgment which had been paid, but this resulted in making the executors directly interested, as they were seeking to sustain their right to be reimbursed for the judgment. Matter of Smith, 153 N. Y. 124, 47 N. E. 33. At first blush, this rule of evidence may seem unjust and unsound; but on reflection it will be seen that, where the validity of a claim against an estate depends on the personal knowledge of an executor or administrator, he may protect himself by not voluntarily settling the claim. If it should be established on the accounting before the surrogate, where interested parties could be heard (sections 1822, 2743, Code Civ. Proc.), or if an action be brought or a reference had of the claim, which becomes an action, and the claim be established by his evidence which is then competent, he could not be charged with negligence, and the claim could not be disallowed on the accounting, even though, because established by judgment, he had then become an interested party and an incompetent witness (section 2743, Code Civ. Proc.). Other exceptions to the admission and rejection of evidence were taken, but they do not require special consideration, in view of the rule that a decree of a surrogate's court may not be reversed for errors in receiving or rejecting evidence unless "necessarily" prejudicial. Code Civ. Proc. § 2545; Matter of Miner, 146 N. Y. 121, 40 N. E. 788.

I am of opinion that the contestants fairly sustained the burden of showing both that the widow's claims were not enforceable, and also either collusion or negligence on the part of the executors in allowing the recovery of the judgment.

According to the claim filed by the widow, neither the $3,000, nor the proceeds of her New Jersey farm, was loaned to her husband; and yet the judgment she recovered went upon that theory, for she was allowed interest upon both. Her formal claim was, as has been seen, that she turned the money and property over to him "for investment, and to be dealt with by him for the benefit of this claimant." In the absence of negligence or mismanagement, therefore, she would only be entitled to an accounting for the property into which her money and property went, provided that original understanding was not altered. Her testimony before the referee was in accordance with this construction of her claim. She was not cross-examined. The executor Watson was called as a witness in her behalf, and he was cross-examined, but apparently with a view to establishing rather than disproving her claim. The undisputed evidence of the transactions between the claimant and her husband shows that these were not loans, and that her property, so far as it was used, was invested, together with property of her husband, and by their mutual consent and co-operation, as joint ventures, and that the property was in fact ultimately partitioned and divided between them equitably and substantially in accordance with their respective interests. Her farm, instead of being

sold for $6,000, and the proceeds turned over to her husband and
invested by him, as the referee was given to understand by her
testimony and that of the executor Watson, was exchanged for a
long-term lease of premises No. 106 Eighth avenue, New York
City. A contract for the exchange was first negotiated and made
in her name, and by her written direction the lease was assigned,
not to her husband, but to him and herself. The purchase price of
the leasehold was $27,250, and the equity of the assignor thereof
was $14,750. Title was taken subject to the incumbrances, and
the husband paid the entire consideration for the equity, with the
exception of his wife's farm, which was turned in at a valuation
of $6,000. It is claimed that Corbit received $3,000 through his
wife, which was used in paying this consideration. Upon the ref-
erence of her claim, she was permitted to testify, without objection
to her incompetency, that in the month of January, 1896, her hus-
band collected $3,000 owing to her from her father's estate, and
never accounted therefor; and the executor Watson, who, it ap-
pears, had no personal knowledge of the source from which the
testator obtained the money, except that it had not been received
from his business, testified that there was deposited to the credit
of the testator, in his private bank account, the sum of $2,000 on
January 2, and $1,000 on January 4, 1896. It is therefore claimed
that, even though the widow may have been a competent witness
on the accounting, on account of the fact that her claim has been
finally settled, since this has resulted from the neglect of the ex-
ecutors to object to her incompetent testimony on the reference
of her claim, without which evidence the claim as to the $3,000
was not established, her evidence should receive no consideration.
As I view the case, it is unnecessary to decide this question, for,
assuming that her farm and $3,000 went into this trade, yet I think
she has been fully paid, by receiving and accepting property which
at the time both she and her husband believed to be more than
her equity, whether it be treated as a loan or an investment, or as
a joint speculation. On this basis her investment in the leasehold
aggregated $9,000, and that of her husband $5,750. The leasehold
was exchanged, by her consent, for premises Nos. 170 and 172 East
Ninetieth street, which at the time were of about equal value. The
husband took the title to No. 170, which was subject to incum-
brances aggregating $27,000, and the wife took title to No. 172,
which was then subject to incumbrances aggregating $27,500; but
the husband subsequently paid off $2,500 of the incumbrances
thereon, making the principal amounts invested by him $8,250, and
leaving his premises No. 170 subject to incumbrances for $2,000
more than her premises No. 172, of supposed equal value. It ap-
pears that the husband received and appropriated to his own use
all of the rents of these respective parcels, but it is not clear that
they exceeded the expenditures; and, as the learned referee well
states, the presumption is that he accounted to his wife therefor,
and that presumption is not overcome by the testimony of the
executor Watson that she did not receive any of the moneys.

Moreover, it appears that Corbit, after paying off a $4,000 mortgage on the premises 170 East Ninetieth street, exchanged the same for premises 132 West Fifteenth street, which he devised to his wife. There was a second mortgage of $6,700 upon these premises, which the executor Watson, with funds of the testator, paid off about three weeks before the latter's death, and after knowledge concerning the provision of the will devising this property. Watson testified that the testator directed this payment to be made; but the testator, then nearly 79 years of age, was on his deathbed, and, according to the general testimony of Watson, was in a comatose or semicomatose condition. The provision of the will devising this and other property to the widow is followed by a reference to their business dealings concerning her New Jersey farm, and is as follows:

"Second. I give, devise and bequeath unto my beloved wife Mary Elmer Corbit my farm at Rahway in the State of New Jersey, together with all the buildings and improvements thereon, together with all the stocks, crops, farming implements and household furniture thereat; also the real estate, consisting of an apartment house and lot of land situate on the south side of West 15th Street between Sixth and Seventh Avenues, in the Borough of Manhattan, in the City and County of New York, known as number 132 West 15th Street in said City, to have and to hold the same unto her and her heirs forever absolutely. I also give and bequeath unto my said wife the sum of $3,000 in cash, and all of the furniture in the bedroom occupied by her and myself at Number 433 West 23rd Street in said City and borough, together with each and every article and thing she may have brought there or which belonged to her. I also give and devise unto my said wife a grave for the interment of her body in my plot in Greenwood Cemetery.

"The above devises and legacies are given to my said wife and to be accepted by her in lieu and stead of all her dower and right of dower and rights and interests in and to my real and personal estate.

"I have heretofore given and caused to be conveyed to my said wife the real estate, consisting of an apartment house and lot of land, known as number 172 East 90th Street in said city and borough, it being my intention at the time to give said property unto her in the place and stead of her farm at Oak Tree, New Jersey, which was sold by her and the proceeds in part used in the purchase of said last named real estate."

The executors were aware of the husband's claim as stated in his will concerning these matters, but they neither attempted to establish nor brought the principal facts tending to sustain it to the attention of the referee, although such facts were all known to the executor Watson. The executors, instead of presenting the facts concerning the widow's claim to an attorney, and asking his advice thereon, reported to their attorneys, and informed them "that they had examined the claim, and that they knew that it was correct; that the money was owing to Mrs. Corbit, but they desired to have her make her formal proof, so that they would be held harmless in case anybody would object to the payment on the accounting"; and they were advised to make formal objection to the claim, and that the matter would then be referred to a referee, before whom she and whoever else knew about it could testify, and that, if the referee found the evidence sufficient, judgment would be entered in the Supreme Court, and they would be justi-

fied in paying the claim. The claim was then formally rejected and referred. On the reference the executors were represented by the managing clerk of the attorneys, who, however, had, in the capacity of a managing clerk, practiced his profession five or six years. They stipulated that each party should bear one-half the expenses of the reference, and that no costs should be recovered. It was a perfunctory hearing, and the referee would have been justified in concluding, and doubtless did, that it was only a formal, friendly hearing, and that there was no real opposition to the claim, or question presented for serious consideration.

Neither the testimony of the claimant nor of Watson was technically accurate, and their testimony was misleading, in that they stated that the farm was sold, and her husband received the proceeds; and they neither offered the records of the real estate transactions in evidence, nor testified to the facts which would have shown an adjustment between the parties substantially as recited in the will. Moreover, it appears that the widow has accepted all the property devised and bequeathed to her, and effect should be given to the provision of the will that it is in lieu not only of dower, but of all claims against his personal estate. Since the only other claim she could have against his personal estate would be as a creditor, this should be construed as an intention on his part to be in payment of any claim she might have against his estate, and she should be estopped from asserting a claim inconsistent with a provision made for her benefit in the will, which she has elected to accept. She was allowed to recover as for $9,000 loaned, less an admitted credit of $1,500, the amount realized for her equity in the premises 173 East Ninetieth street in a sale after her husband's death. It thus fairly appears, I think, that her claim was not enforceable, and that they knew it. It was their duty not only to reject the claim, but upon the trial to show the facts which were known to them constituting a defense thereto. Schults v. Marette, 146 N. Y. 137, 40 N. E. 780; Butler v. Johnson, 111 N. Y. 204, 18 N. E. 643, and cases cited. This they failed to do, and, under all the circumstances, they were properly chargeable with negligence. Whether the tender consideration shown the widow in the enforcement of this claim—born of a desire on her part to obtain a greater share in her husband's estate than he intended she should have—was owing to collusion, or their attitude toward it was influenced by the abandonment on her part of opposition to the probate of the will, which for a time she threatened, need not be determined. It is sufficient that they neglected their duty to the residuary legatees, whose legacies could only be paid in part if they be credited with the payment of this judgment.

The account was surcharged $906.49, which the executors paid to certain devisees to whom specific parcels of land were devised to reimburse them for interest accrued on mortgages on the lands from the last preceding interest day until the death of the testator, on the theory that it was apportionable from day to day. As between the devisees and the personal representatives of the testator,

these were not proper charges against the estate. Section 215, Real Property Law (Laws 1896, p. 594, c. 547); House v. House, 10 Paige, 158; Taylor v. Wendell, 4 Bradf. Sur. 324. The fact that on the appraisal for the purpose of levying the collateral inheritance tax these items of interest were reported as charges against the estate, and that the surrogate confirmed the report, cannot affect the question as now presented.

It was stipulated that no experts should be called as to the value of the services of the attorneys for the executors, but that counsel might make suggestions concerning the same. The referee deducted from the charges for attorneys' services contained in the account the sum of $600 and interest thereon, estimated to be the amount included for services in connection with the unfounded claim, and $250 charged for clerical services of their managing clerk in drafting the account and checking up the vouchers and interest thereon, upon the ground that such services are taxed as costs, and included in the $10 per diem allowance given by section 2562 of the Code of Civil Procedure. We think these questions were properly decided. The testator was conducting business as a real estate agent, and he bequeathed the business to a firm to be composed of two of his executors and the son of the third, giving the executors ten-sixteenths of the profits. The firm was formed accordingly, and took over the business. The executors employed the firm to collect rents on certain premises left by the testator, and not specifically devised. The extra commissions on these were charged in the account. Objection was made to ten-sixteenths of the charge which went to the two executors, and it was properly sustained.

The executors were only allowed one commission. They claim they should have been allowed three, upon the theory that the value of the personal property amounted to $100,000 or more, over and above all debts. Code Civ. Proc. § 2730. If that which is real estate at the testator's death may be considered at all for the purpose of applying this statute, it is evident that only his equities in real estate directed to be converted into personalty under a power of sale may be considered, and that all valid liens must be deducted. The commissions are to be allowed at a time when the value is known, and it is manifest that it is the actual realized value, and not the inventoried value, that is controlling. Applying these tests, the personal estate was less than $100,000, and therefore the surrogate was right in allowing only one commission.

The decree should therefore be affirmed, with separate bills of costs to the respondents appearing separately, payable by the appellants individually.