[S. F. No. 7151.   Department One.—December 13, 1915.]

In the Matter of the Estate of CHARLOTTE L. WILLSON, Deceased.

EXPRESS TRUST IN LAND—TRUST TO CONVEY IS INVALID.—Under the statute of this state as it existed at the time of the taking effect of the will in question, an unambiguous express trust in land, which required the trustees, upon the death of prior beneficiaries, to convey and transfer the trust property absolutely to certain named persons, was unlawful and void. (*Estate of Fair,* 132 Cal. 523, approved.)

ID.—DIRECT DEVISE OF TRUST PROPERTY TO BENEFICIARIES—CONSTRUCTION OF WILL.—To escape that result, words must be found in the will which may be construed as a direct devise of the trust property to the persons to whom the trustees are directed to convey it, words which express the idea that it is to go to those persons, irrespective of the direct devise to the trustees, and without a conveyance by the trustees. A mere belief or understanding is not sufficient.

ID.—WORDS NOT OPERATIVE TO PASS TITLE.—Words which are not operative to pass title at all, which are not dispositive in meaning or effect, but which merely show a knowledge on the part of the testator of the dispositions made in other clauses of the will, cannot avail.

ID.—DIRECTION FOR ABSOLUTE CONVEYANCE BY TRUSTEES.—The word "absolutely," in the clause of the will directing the trustees to convey the trust property, did not indicate an intent on the part of the testatrix that the property should go to the beneficiaries independent of the conveyance. It merely describes the character of the estate to be conveyed, and means that the conveyance is to be unconditional and the estate to be transferred shall be the entire estate in fee.

ID.—EFFECT OF DISPOSITIVE WORDS CONFINED TO LAPSED DEVISES.—A direct devise of the trust property to the persons named as the beneficiaries of the trust is not affected by dispositive words·used in a subsequent clause of the will which operated only to pass the title to any lapsed devise or legacy to the devisees and legatees of the residue.

CLXXI Cal.—29

ID.—WORD "CHILDREN" IN WILL WHEN INCLUDES GRANDCHILDREN.—The word "children," in a will, is held to include grandchildren in only two classes of cases. The first class is where there is an ambiguity in the will itself which leaves the meaning of the testator in respect to the word "children" uncertain. In such cases extrinsic evidence may be introduced to explain the meaning intended by the testator and to show that the word was used to include grandchildren. This class is within the scope of section 1318 of the Civil Code. The other class consists of cases where there is a latent ambiguity, and comes within section 1340 of the Civil Code.

ID.—CONSTRUCTION OF UNAMBIGUOUS WILL—INTENT OF TESTATOR—EVIDENCE OF EXTRINSIC CIRCUMSTANCES.—Where the meaning of the will, on its face, taking the words in the ordinary sense, is entirely clear, and where no latent ambiguity is made to appear by extrinsic evidence, there can be no evidence of extrinsic circumstances to show that the testator intended to do something not expressed in the will.

ID.—BEQUEST TO "CHILDREN" OF BROTHERS AND SISTERS.—Where a testatrix had a number of children of her brothers and sisters living, both at the time of the execution of her will and at the time of her death, and there is nothing in the context of the will or in the disposing clause which raises an uncertainty as to the meaning of the words, a bequest to the "children" of brothers and sisters cannot be held to include grandchildren.

APPEALS from a decree of the Superior Court of the City and County of San Francisco distributing the estate of a deceased person. J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

J. P. Langhorne, for Appellants, William G. Hawley et al.

Clarence G. Atwood, for Appellants, Margaret S. Hayward, et al.

Charles E. Wilson, for Respondent executor.

Parker S. Maddux, for Respondents, Anna Rhenbottom et al.

W. W. Sanderson, for Respondent, S. Nathan.

SHAW, J.—In this case the record presents two appeals from the final decree of distribution of the estate of Charlotte L. Willson, deceased.

Each involves the interpretation of certain clauses of the last will of the decedent. Margaret S. Hayward, Myra M. Jeffers, and Eunice C. Taylor appeal from that portion of the decree distributing to the residuary devisees a parcel of land which the will purports to give to trustees for the benefit of said appellants. William G. Hawley, and others, all of whom are grandchildren of the deceased sisters of the testatrix, appeal from the decree so far as it excludes them from participation in the residue of the estate. We will consider these appeals separately and in the order mentioned.

1. By the sixth clause of the will the testatrix devised and bequeathed to Milo S. Jeffers and John A. Roy, as trustees, a parcel of land, to be held by them in trust for the purpose of allowing Fred Kuhnle and Mary E. Kuhnle, and the survivor of them, to occupy and enjoy the same as a home, free of charge and expense, during their respective lives. The trust clause then proceeds as follows: "Upon the death of both the said Fred Kuhnle and Mary E. Kuhnle, his wife, said trustees shall convey and transfer said property absolutely to Mary S. Hayward, wife of Louis Hayward, Myra M. Jeffers and Eunice C. Jeffers (daughters of the late Milo S. Jeffers), and to Allan J. Roy, son of John A. Roy, all of San Francisco, California, in equal shares, share and share alike." Kuhnle and his wife both died before the death of the testatrix.

The court below held that the trust thus declared was void, under the decision in the *Estate of Fair*, 132 Cal. 523, [84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000], and the numerous other cases following that decision, and that in consequence thereof the property became a part of the residue and went to the residuary devisees under the residuary clauses of the will. These appellants insist that this was error, and that the provisions of this will are distinguishable from those construed in the *Estate of Fair* and other similar cases. We are unable to perceive any distinction between the language above quoted and that construed in the cases referred to. The will involved in the *Estate of Fair* devised certain property to trustees, in trust, to have and to hold the same during the lives of the testator's children, and the survivor of them, "and upon the death of such survivor, to transfer and convey" the property to certain persons named. The court held that, to quote from the syllabus, "an express trust to con-

vey real property to beneficiaries named in the instrument creating the trust, is not lawful, under the statute of this state, but is forbidden thereby and is invalid and void.'' While the court has subsequently declared that the decision in the Fair case should not be extended to cases where words could be found in the will constituting a disposition of the property to the beneficiaries of the trust without aid from the conveyance to be made by the trustees, it has consistently adhered to the proposition that a devise of property in trust to be conveyed by the trustees to beneficiaries named, is forbidden by law, and is void. (*Estate of Sanford*, 136 Cal. 97, [68 Pac. 494]; *Estate of Pichoir*, 139 Cal. 682, [73 Pac. 606]; *McCurdy* v. *Otto*, 140 Cal. 48, [73 Pac. 748]; *Hofsas* v. *Cummings*, 141 Cal. 525, [75 Pac. 110]; *Estate of Dixon*, 143 Cal. 511, [77 Pac. 412]; *Sacramento Bank* v. *Montgomery*, 146 Cal. 745, [81 Pac. 138]; *Campbell etc.* v. *Campbell*, 152 Cal. 201, 204, [92 Pac. 184]; *Estate of Heberle*, 153 Cal. 275, 276, [95 Pac. 41]; *Estate of Spreckels*, 162 Cal. 559, 568, [123 Pac. 371].)

The appellants claim that the word ''absolutely,'' in the clause directing the trustees to convey the property to the appellants, distinguishes this case from the principle of the Fair case, and indicates an intent on the part of the testatrix that the property shall go to the beneficiaries independent of the conveyance from the trustees. We see no reason for such construction. The word ''absolutely'' is not a word of conveyance. As here used, it merely describes the character of the estate to be conveyed. It means nothing more than that the conveyance is to be unconditional, and that the estate to be transferred thereby shall be the entire estate in fee in the property. Another distinction is sought to be derived from the fact that in the will of Fair the words ''convey and transfer'' were used several times with respect to the disposition of parcels of property. In the opinion in the Fair case the court said that not only were the words ''convey'' and ''transfer'' used without qualification ''but those words are used over and over again—thus showing *ex industria* what his fixed purpose was.'' While it may be that the repetition of such words indicates a greater fixity of purpose than if they were used only once, we are unable to see any lack of clearness in their meaning when they are used but once. The decision in the Fair case was not based upon

the fact that these words were repeated. That fact was merely mentioned by way of emphasis. The meaning of the words was the thing which controlled the decision in that case. In fact, the phrase was used twice in the present will. Certain other land was devised to the same trustees by the fifth clause of the will, in trust, to give the rents to Kuhnle and his wife during their joint lives and upon the death of both of them to "convey and transfer" the same to the residuary devisees. If a repetition of the phrase has any bearing upon the question, we have here that circumstance of similarity to the Fair will.

An expression in the eighth clause is also relied on as expressing a direct devise of the trust property described in the sixth clause. To an understanding of this point it is necessary to refer to the seventh clause which devises to Margaret S. Hayward, Myra M. Jeffers, Eunice C. Jeffers, and Allan J. Roy, two lots in San Francisco. These are the same persons as those named in the sixth clause as beneficiaries of the trust there declared. The court finds that Mary S. Hayward, named in the sixth clause, is Margaret S. Hayward. Allan J. Roy did not survive the testatrix, and as he was not a relative, the gift to him lapsed. (Civ. Code, secs. 1310, 1343.) The provision in the eighth clause is as follows: "In the case of the death of any of my devisees and legatees hereinbefore mentioned before my decease, I then give the share of my estate which such devisee or legatee should have received under the will, in equal proportions," to the children of the brothers and sisters of the testatrix.

The argument is that the seventh clause shows that the testatrix fully understood that the three surviving beneficiaries of the trust were devisees under the will, that the words "any of my devisees and legatees" in the eighth clause were there used by her only to describe the persons referred to, but that when she came to identify the property which, in case of the death of any of them, should go to others, she did not use the words "devise" or "legacy," but designated such property as "the share of my estate which such devisee or legatee should have received under this will," that this indicates that the testatrix understood that there would pass to the survivors not only the property technically devised to them, but the entire "share of my estate" which would pass to them under all the provisions of the will, including that

which they would receive as beneficiaries of the trust declared in the sixth clause, which trust, it must be presumed, she deemed valid.

This language will not serve the desired purpose. It may even be conceded that the testatrix intended to include the beneficiaries of the trust by the use of the phrase "devisees and legatees," although they were not technically such. None of the devisees or legatees mentioned prior to the eighth clause was of kin to the testatrix, and hence the property given to any one of them was subject to lapse if that person did not survive the testatrix. The purpose, and the sole purpose, of the eighth clause is, therefore, apparent. It was to prevent intestacy from a possible lapse. Its dispositive words do not apply to or dispose of anything except that which would have gone to a predeceased devisee or legatee if he or she had survived. They do not operate at all upon the share of any person who survived the testatrix. They express no intention to dispose of property to any survivor of the devisees, legatees or beneficiaries. They are, therefore, insufficient under the rule of the Fair case. In order to escape the doctrine of that case, words must be found in the will which may be construed as a direct devise of the trust property to the persons to whom the trustees are directed to convey it, words which express the idea that it is to go to those persons, irrespective of the direct devise to the trustees, and without a conveyance by the trustees. (*Estate of Spreckels*, 162 Cal. 559, 568, [123 Pac. 371].) A mere belief or understanding is not sufficient. Words which are not operative to pass title at all, which are not dispositive in meaning or effect, but which merely show a knowledge on the part of the testatrix of the dispositions made in other clauses of the will, cannot avail, and nothing more appears here. Such words may sometimes be resorted to in aid of the interpretation of a dispositive clause which is susceptible of two meanings, and may in such a case strengthen the interpretation of such ambiguous clause against intestacy and in favor of a direct devise. An example of this occurs in the *Estate of Spreckels*, 162 Cal. 559, [123 Pac. 371], and is discussed at page 576 of the report. The words of the eighth clause have no office of that character to perform in the present case, for here there is no ambiguity. Every clause of the will is clear and certain, both in meaning and effect. Both the trust clause and the eighth clause are

without ambiguity, one devising the trust property to the trustees, in trust to convey to the appellants and Allan J. Roy, the other operating only to pass the title to any lapsed devise or legacy to the devisees and legatees of the residue. To construct a direct devise of the trust property to the surviving beneficiaries out of a clause which, at most, can operate only upon the shares of those who did not survive the testatrix, would give it a meaning and effect which its words do not bear, and apply it to a purpose it was not intended to serve.

2. The appeal of William G. Hawley and others, grandchildren of the deceased brothers and sisters of the testatrix, involves the construction of the eighth and ninth clauses of the will, which are as follows:

"Eighth 8. In the case of the death of any of my devisees and legatees hereinbefore mentioned before my decease, I then give the share of my estate which such devisee or legatee should have received under this will, in equal proportions, share and share alike, to the children of my brothers, George and William W. Goodrich and to the children of my sisters, Eliza G. Hawley, Harriet K. Berry, and Jane Augusta Berry."

"Ninth 9. I give, devise and bequeath to the children of my said brothers and sisters hereinbefore mentioned all the rest, residue and remainder of my estate of every kind, character and description wheresoever situate, lying and being."

The particular point involved in this interpretation of the will is the question whether the word "children," as used in these clauses, can be construed to include grandchildren. The court below held that the word "children" was to be taken in its ordinary sense, and included only the sons and daughters of the brothers and sisters and that it did not include grandchildren. Accordingly, it distributed the residue to the six sons and daughters of said brothers and sisters who were living at the death of the testatrix. The will was executed on October 30, 1900. The testatrix died on December 18, 1911. At the time of the execution of the will all of the brothers and sisters of the testatrix were dead. The two brothers each left but one child, which child survived the testatrix. At the time of the execution of the will there were eight of the children of the sisters living. Four of these, namely, Alonzo G. Hawley, George K. Hawley, Gertrude E. McDonald, and Alexander F. Berry, died prior to the death

of the testatrix, and each left children who survived the testatrix and who appeal from the decree. The two other appellants, Fred S. Berry and Gertrude Ribenack, are children of Charles G. Berry, a son of one of the sisters. Charles died in the year 1870, thirty years prior to the execution of the will. There are two other grandchildren living, the children of George F. Cook, who died in 1909, but they do not appeal. Six of the children of the brothers and sisters of the testatrix were living at her death.

The word ''children,'' in a will, has been held to include grandchildren in only two classes of cases. The first class is where there is an ambiguity in the will itself which leaves the meaning of the testator in respect to the word ''children'' uncertain. In such cases extrinsic evidence may be introduced to explain the meaning intended by the testatrix and to show that the word was used to include grandchildren. This class is within the scope of section 1318 of the Civil Code. The other class consists of cases where there is a latent ambiguity, and comes within section 1340 of the Civil Code. Where the will purports to make a gift to ''children'' and it appears that none were living at the execution of the will, or afterward, extrinsic evidence may be given tending to prove that a gift to grandchildren was intended. In such cases the ambiguity itself, as well as the facts which explain it, appears from extrinsic evidence. (2 Corpus Juris, 1314; 2 Underhill on Wills, sec. 547.) As there were a number of children of the brothers and sisters living, both at the time of the execution of the will and at the time of the death of the testatrix, this case does not come within the second class.

The first class above mentioned includes only those cases where there is something in the context or in the disposing clause which raises an uncertainty as to the meaning of the words. The rule is well established that where the meaning of the will, on its face, taking the words in the ordinary sense, is entirely clear, and where no latent ambiguity is made to appear by extrinsic evidence, there can be no evidence of extrinsic circumstances to show that the testatrix intended or desired to do something not expressed in the will. Where, in such cases, taking the words of the will alone, the intent is clear, that intent must be followed, and proof that the testatrix desired some other results or that the circumstances were such that such desire might be inferred, is inadmissible.

(2 Underhill on Wills, sec. 548.)    The following decisions of this court affirm the rule above stated: *Estate of Young,* 123 Cal. 337, 342, [55 Pac. 1011] ; *Estate of Tompkins,* 132 Cal. 173, 176, [64 Pac. 268] ; *Estate of Fair,* 132 Cal. 523, 532, [84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000] ; *In re Walkerly's Estate,* 108 Cal. 627, 659, [49 Am. St. Rep. 97, 41 Pac. 772] ; *In re Schedel's Estate,* 73 Cal. 594, 597, [15 Pac. 297] ; *Rhoton* v. *Blevin,* 99 Cal. 648, [34 Pac. 513] ; see, also, 2 Words and Phrases, p. 1128, where many additional cases are cited.

There is nothing in the context of this will which throws doubt upon the meaning of the word "children" as used in the residuary clauses, nothing to suggest that it was not used in the ordinary sense to describe the immediate offspring of the brothers and sisters named.    The evidence of extrinsic circumstances showed that the testatrix had much love and affection for her grandnephews and grandnieces.    From this an inference might be indulged that she would not wish to deprive them of the share of her estate which the law would have cast upon them through relationship.    But the will itself is clear; it excludes them from its benefits, and to say that the testatrix should have included them would be to make a new will for her instead of the one she chose to execute. The evidence was not admissible for the purpose of changing the clear meaning of the words.    The court below was correct in its interpretation.

The decree of distribution is affirmed.

Sloss, J., and Lawlor, J., concurred.

Hearing in Bank denied.