[Civ. No. S. C. 56.   Second Appellate District, Division One.—November 26, 1937.]

In the Matter of the Estate of MAUDE C. BUSH MATTHIESSEN, Deceased.   MABEL CHAPMAN JONES, Executrix, etc., Appellant, v. FRANK MATTHIESSEN, Respondent.

Potter & Potter for Appellant.

Hawkins & Hawkins and Eugene A. Hawkins, Jr., for Respondent.

DORAN, J.—Appellant, Mabel Chapman Jones, as executrix of the estate of Maude C. Bush Matthiessen, and individually, as the residuary legatee of said estate, appeals from certain portions of an order and decree settling first and final account and ordering partial distribution of the estate of Maude C. Bush Matthiessen, deceased.

The facts, briefly, are as follows: After his marriage to decedent in August, 1927, respondent Frank Matthiessen conveyed to her a residence then owned by him in Beverly Hills, California. During the early part of the year 1932 said Frank Matthiessen separated from his wife and took up his residence in another state. The property in Beverly Hills, together with all the furniture and furnishings therein contained, was left, under the terms of decedent's will admitted to probate, to respondent. All the rest, residue and remainder of the estate were devised and bequeathed to said Mabel Chapman Jones, decedent's sister (appellant herein), who was named and later appointed, and who qualified as, executrix.

At the time of the execution of the will, in July, 1932, the aforementioned residence property was unencumbered, but upon the death of decedent it developed that about fourteen months after the execution of the will and about six months prior to her death, she had borrowed the sum of $12,000, evidenced by her promissory note in favor of the lender in that amount, payable in instalments, to secure the payment of which she had mortgaged said Beverly Hills property. The will, however, contained no reference to this mortgage lien or encumbrance on the Beverly Hills residence.

In due course of the administration of the estate, the assignee of the note and mortgage presented to appellant, in her capacity as special administratrix, its claim based on the full unpaid balance of the mortgage note, but the claim

was rejected by her, although she did pay the instalments of principal and interest when they became due by appropriating for this purpose rents paid to her by tenants who had leased the Beverly Hills property. The executrix in her final account charged herself with rents collected, and credited herself, among other items, with the amounts paid toward principal and interest on the mortgage.

The court held that the rents were not properly applied toward the payment of the mortgage and that the residuary estate should be charged with the payment of the mortgage lien in exoneration of the said devised real property, and to provide the necessary cash by a present sale of sufficient of the property comprising the residuary estate. As to the rents, the court held respondent to be entitled to a cash balance in the sum of $2,508.71.

The appeal herein is from those portions of the decree wherein the court directed that the executrix of the estate (1) discharge out of the residuary portion of the estate the mortgage placed upon the Beverly Hills property, and (2) pay to respondent the sum of $2,508.71 in cash representing a balance due respondent for rents collected; also, (3) from the order refusing to adjudicate the question of whether executrix and her attorneys are entitled to extraordinary fees for services rendered, and in ordering the petition therefor "off calendar" until the order to discharge said mortgage is complied with.

Section 78 of the Probate Code (formerly sections 1302 and 1303 of the Civil Code) provides as follows: "Neither a charge or encumbrance placed by a testator upon property disposed of by his will, for the purpose of securing the payment of money or the performance of any covenant or agreement, nor a conveyance, settlement, or other act of a testator, by which his interest in any such property is altered, but not wholly divested, is a revocation of the disposal; but the property, subject to such charge or encumbrance, or the remaining interest therein, passes by the will."

Appellant contends that the effect of the concluding words of this section is to abrogate the common-law rule that the devisee of specific real estate which has been encumbered by the testator in his lifetime may require that it be freed from the burden of such encumbrance at the expense of the residuary estate. In effect, it is argued that the words "subject to such charge or encumbrance" limit the estate to which

the devisee is entitled as between such devisee and the residuary legatee. It may be conceded that by statutes, and judicial decisions construing them, in many states it is now the rule that the devisee of mortgaged property in all cases takes it *cum onere* and without right of exoneration from the residuary estate, unless a different intent is expressed in or can be gathered from the will. In this state, however, the courts have followed the ruling in *Estate of Woodworth*, 31 Cal. 595, in which precisely the same contention as that here advanced by appellant was rejected. The court there said: "And it is also the settled rule of English and American law, that this order" (of payment of debts of the testator) "is not to be disturbed by the fact that lands are devised subject to the mortgage or incumbrance thereon. The personal estate is first to be applied and exhausted, even for the payment of the debts charged upon the real estate by mortgage, or other incumbrance, if the debt so charged upon it was a personal debt of the testator; for the mortgage is regarded as merely a collateral security for the personal obligation. . . . It is further claimed that section fifteen of the 'Act Concerning Wills' requires the devisees of lands incumbered by mortgages to take them *cum onere* without any right to have them exonerated out of the personal estate. The section is as follows: 'A charge or incumbrance upon any estate for the purpose of securing the payment of money or the performance of any covenant or agreement shall not be deemed a revocation of any will relating to the same estate which was previously executed, but the devises and legacies therein contained shall pass *subject to such charge or incumbrance.*' (Belk. Prob. Act, p. 209.) It is plain, however, that no such object was contemplated or provided for in this section. The object was simply to provide in express terms that a subsequent mortgage should not be construed as a revocation of the will as to the mortgaged land—that it should still go to the devisees, but subject to the mortgage. That is to say, that, as to the mortgagee and devisee, neither the mortgage nor the devise should fail, unless the entire mortgaged estate should be required to satisfy the debt secured. This is a provision affecting the rights of the parties to the mortgage and devise. It has no reference whatever to the order of priority as between legatees, devisees and heirs. The words 'subject to such charge or incumbrance' mean no more nor less, in this connection in a statute, than in the same

connection in a will. And the signification of these words, in a similar connection in wills, had long been settled by an unvarying line of decisions. Says Jarman: 'Thus it is settled that a devise of lands subject to the mortgage or incumbrance thereupon, does not so throw the charge on the estate as to exempt the funds, which by law are preferably liable.' . . . It was with reference to this settled construction of similar language in wills that these words were used in the statute. Like many of the provisions already cited, it only enacted in express terms the rule of the common law upon the subject. In fact, if any other specific intent can be inferred from the adoption of this provision, it would seem to be to avoid by express provision, rather than effect, the result claimed for it by the respondent; for, at common law, any change in the condition, any alteration or new modeling of the estate in lands after the making of the will, was a revocation, except in case of mortgages and charges on the estate for debts, which were only a revocation *quoad* the special purpose, and were taken out of the rule on the ground that they were securities only. . . . *Thus far we have seen that the long-established rule of priority in marshaling the assets, as between legatees, devisees and heirs, has not been disturbed by our statute.* It follows that as between the legatee of the personalty, and the devisees of the realty, the executor was not authorized to appropriate the rents of the real estate accrued subsequent to the decease of the testator, to the satisfaction of the mortgage debt in exoneration of the personalty.'' (Italics added.)

Neither reference nor research reveals any subsequent California case wherein the conclusion of the Woodworth case, *supra*, has been overruled; nor, in the various reenactments of the statute there considered has the legislature indicated that the court in that case misunderstood its intent.

Appellant, however, argues as follows, quoting from appellant's brief: ''The punctuation of the last clause of Section 78 of the Probate Code is significant. The intention of the Legislature is plainly shown by the addition of the phrase 'or the remaining interest therein'; also by having placed a comma after the phrase 'but the property', and a comma after the phrase 'subject to such charge or encumbrance, . . . . ' If the Legislature had intended that this was to be construed as a description of the condition of the property

which passes to the specific devisee, it would not have used a comma after the word 'property'.''

Section 1302 of the Civil Code originally was as follows: ''A charge or encumbrance upon any estate, for the purpose of securing the payment of money or the performance of any covenant or agreement, is not a revocation of any will relating to the same estate which was previously executed; but the devise and legacies therein contained must pass, subject to such charge or encumbrance.'' Section 78 of the Probate Code, which, in substance, is the reenactment of section 1302 and section 1303, has been hereinbefore quoted.

Appellant, as above noted, attaches considerable significance to the use of the comma and, in that connection, it is true that the presence or absence of a comma may, in some circumstances, effect a vital change in the meaning of a statute, but, from an examination of the history, as well as the substance and form, of these sections, the reasonable and logical conclusion appears to be that the legislature intended them to have no different meaning in their reenacted form than they had before. Especially is this true in the light of the fact that the reenacted provisions above referred to were adopted by the legislature after the decision in the Woodworth case, *supra,* under which circumstances, had such a vital change been contemplated, plain language would have been employed rather than the use of a mere comma. The language in its present form still states only the obvious fact that the property passes, encumbered. It could pass no other way, without depriving the mortgagee of his lien.

*Estate of Woodworth, supra,* was cited in *Estate of Phinney,* Myr. Prob. 239; *Estate of Heydenfeldt,* 4 Coffey's Prob. Dec. 510; *Estate of De Bernal,* 165 Cal. 223 [131 Pac. 375, Ann. Cas. 1914D, 26]; and the principle was followed in *Estate of Morse,* 95 Cal. App. 652 [273 Pac. 130]. In *Estate of De Bernal, supra,* it was said: ''The mortgage was a mere incident of the debt evidenced by such note. Her'' (decedent's) ''liability on account thereof was just as much a 'debt' within the meaning of the word as used in the provisions regarding payment of debts contained in our probate act, as any of her unsecured liabilities. . . . We find no dissent in the authorities on the proposition that where the mortgage lien was created by the testator himself to secure his own debt, and at the time of his death the mortgage is

simply collateral security for the personal obligation, it is to be paid, as between executors, devisees, legatees, and heirs, in the same manner as the general unsecured debts of the deceased, in so far as the question from what property of deceased it is to be paid is concerned, unless the will discloses a different intent on the part of the testator. This principal was stated as 'the settled rule of English and American law' in *Estate of Woodworth,* 31 Cal. 595, 600.''

Appellant asserts that sections 1301 and 1303 of the Civil Code were adopted from provisions of the New York Code (Decedent Estate Law, book 13, art. II, sec. 38), which uniformly have been construed by New York courts as depriving the devisee of the right to exoneration from the residuary estate. Respondent calls attention, however, to section 250 of the Real Property Law of that state, which provides that when real property, subject to a mortgage executed by any ancestor or testator, descends to an heir or passes to a devisee, such heir or devisee must satisfy and discharge the mortgage out of his own property, without resorting to the executor or administrator of his ancestor or testator, unless there be an express direction in the will that the mortgage be other-wise paid. This enactment has been in effect in one form or another in the state of New York since at least as far back as 1842, and although it is not mentioned in the case cited by appellant (*Langdon* v. *Astor,* 10 N. Y. Super. Ct. (3 Duer) 477), it is cited with the Decedent Estate Law, in *Halsey* v. *Reed,* (1842) 9 Paige, 446, *Wetmore* v. *Peck,* 66 How. Prac. 54, and *In re Watson,* 101 App. Div. 550 [92 N. Y. Supp. 195] (cited in *In re Dell's Estate,* 154 Misc. 216 [276 N. Y. Supp. 960]) in support of the holding that the devisee is not entitled to exoneration. Further, granting that ordinarily a statute adopted from that of another state is presumed to have been adopted with the construction placed upon it by the courts of that state, that presumption is here overcome by the long-standing decisions of this state favoring a contrary interpretation.

The foregoing impels the conclusion that the trial court properly ordered that the mortgage be paid out of the residuary estate. ▮ The court also was correct in ordering the rents of the property which had been collected by appellant be paid to respondent, the estate being solvent. (*Estate of Woodworth, supra; Washington* v. *Black,* 83 Cal. 290 [23 Pac. 300]; *Estate of De Bernal, supra.*)

■ Nor did the court err, as contended by appellant, in rejecting an offer by appellant to prove "intent". In this connection appellant sought to prove the intent of the testatrix at the time the will was executed as well as the intent at the time the mortgage was executed, contending that such intention contemplated that the mortgage should not be paid from the residuary estate. It should be noted here that the mortgage is silent on this subject. It should also be noted that the will is free of ambiguity. Under such circumstances the intention of the testatrix is evidenced by the mortgage and by the will, for whatever might have been the actual intent of the testatrix at the time of the execution of the mortgage, the will continued in effect thereafter and now states her intent as of the date of her death. (*Estate of Babb,* 200 Cal. 252 [252 Pac. 1039].) In the absence of uncertainty or ambiguity, her intent must be gathered from the will. (*Estate of Woodworth, supra; In re Hodgkin's Estate,* 110 Or. 381 [221 Pac. 169, 223 Pac. 738]; *Estate of Willson,* 171 Cal. 449 [153 Pac. 927]; *Estate of De Bernal, supra.*)

■ Appellant's final contention: that the lower court erred in denying distribution to appellant as residuary legatee until its order for exoneration of the mortgage should be obeyed and that it abused its discretion in declining to pass upon the application for extraordinary fees and commissions and placing such application "off calendar" until the main question should be settled, cannot be sustained. As to these issues the court acted with authority, and there is nothing in the record to justify the asserted claim that such action on the part of the court was an error of judgment or an abuse of discretion.

For the foregoing reasons the order and decree appealed from is in all respects affirmed.

York, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 24, 1938.