[Civ. No. 17221. Second Dist., Div. Two. May 22, 1950.]

Estate of GRIFFITH J. GRIFFITH, Deceased. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES, Respondent, v. CITY OF LOS ANGELES (DEPARTMENT OF PARKS), Appellant.

Ray L. Chesebro, City Attorney, Bourke Jones and Roger Arnebergh, Assistant City Attorneys, and Alan G. Campbell, Deputy City Attorney, for Appellant.

Newlin, Holley, Sandmeyer & Tackabury, Clyde E. Holley and Hudson B. Cox for Respondent.

McCOMB, J.—Objector appeals from an order of the probate court allowing the trustee of a testamentary trust of Griffith J. Griffith, deceased, (1) $30,000 additional fees for its extraordinary services in connection with the erection and equipping of the Griffith Park Observatory during the period of 21½ years before the 19th account was filed, and (2) $3,000 for its attorneys' fees in connection with the hearing of the trustee's application for extraordinary fees.

*Facts:* During his lifetime Colonel Griffith J. Griffith gave to the people of the city of Los Angeles several hundred acres of scenic land which is now called Griffith Park. Upon his death in July, 1919, his will created a testamentary trust, naming the corporate predecessor of respondent as trustee with directions that $100,000 of the fund be used for the construction of a Greek Theatre in Griffith Park and the balance be used to construct and equip an observatory and hall of science. His will was admitted to probate on July 11, 1919, and the final decree of distribution entered November 12, 1924.

The estate distributed to the trustee consisted of $256,431.23 in cash, and real estate appraised at $204,460.51. The trust fund was not large enough in 1924 to construct the Greek Theatre and the hall of science. Accordingly funds were permitted to accumulate until 1928, when the Greek Theatre was commenced and by arrangement with the park department of the city of Los Angeles additional funds were provided for the construction and equipping of the theatre.

Shortly thereafter it was decided that the observatory and hall of science should center around a planetarium. Various scientists were consulted and the plan progressed to fruition when the observatory was opened to the public on May 14, 1935.

Prior to the order appealed from respondent filed seven reports and current accounts in which the trustee recited generally its management of the trust funds and the work

which had been done toward effecting the main objects of the trust. In each of these accounts, the seventh of which was filed January 31, 1934, respondent stated it had made charges in a given amount for its services as trustee up to and including the date which closed the period in question and that the sum stated was a reasonable compensation for its services as trustee for that period. Each account after hearing regularly held was approved.

When the trustee filed its eighth report and account on February 20, 1935, it asked for approval of the deduction of a fee of $2,528.97, alleging it was reasonable compensation for its services, and then requested that the matter of extraordinary compensation to it for its services in connection with the building and equipping of Griffith Observatory be reserved for determination at a later date. This account was approved and an order dated March 19, 1935, was entered providing that the account and report "including the compensation charged by the trustee" be settled and approved.

Since the opening of the observatory in 1935, respondent has at various intervals submitted further reports and accounts in which it has accounted for its management of the remaining assets of the trust fund, and in each of these reports through the 18th, the trustee charged certain fees for its "ordinary services" and in some of them repeated the prayer which appeared in the eighth account that the matter of its compensation for "extraordinary services" be reserved for determination at a future date.

In the 19th report which was filed April 25, 1946, respondent made a lengthy recital about the construction of the Greek Theatre and observatory and asked that its extraordinary fees be fixed in the sum of $35,000. Over objection the court allowed respondent extraordinary fees in the sum of $30,000 as additional fees for all the trustee's services in connection with the Griffith Observatory project, and $3,000 for its attorneys' fees in connection with the hearing of the application for extraordinary fees. From this order the present appeal ensued.

*Questions:* First: *In view of the fact that respondent did not ask for fees for extraordinary services in any of the first seven accounts filed by it, but did ask and receive fees for its ordinary services, (a) was the matter of extraordinary fees res judicata, (b) had respondent waived its right to apply for such fees, and (c) was respondent barred by laches?*

This question must be answered in the negative. There is a distinction between "ordinary" and "extraordinary" services for a testamentary trust with respect to the allowance of compensation. (*Estate of Lopez,* 79 Cal.App.2d 399, 403 [179 P.2d 621]; *Estate of Lair,* 52 Cal.App.2d 222, 225 [126 P.2d 133]; *Estate of Kruce,* 10 Cal.App.2d 426, 430 [51 P.2d 1174].) In the instant case each of the first 18 accounts dealt with compensation to the trustee only so far as ordinary services were concerned.

■ (a) Where an annual account deals only with ordinary compensation and there is no application for extraordinary compensation the account is conclusive only as to the matter included therein and is not res judicata so far as a subsequent application for fees for extraordinary services is concerned, even though the application is for fees for extraordinary services rendered prior to the previous accounting. (*Estate of Adams,* 131 Cal. 415, 416, 417 [63 P. 838]; *Walls v. Walker,* 37 Cal. 424, 426 [99 Am.Dec. 290]; *Estate of Evans,* 62 Cal.App.2d 249, 257 [144 P.2d 625].) Therefore pursuant to this rule, since in none of the first 18 accounts did respondent request fees for extraordinary services rendered, the doctrine of res judicata is not here applicable and the judge of the probate court properly considered such question.

■ (b) By failing to apply in an account current for fees for extraordinary services a trustee does not waive the right to subsequently make application therefor. (*Elizalde v. Murphy,* 4 Cal.App. 114, 116 [87 P. 245]; cf. *Estate of Dillon,* 149 Cal. 683, 685, 686 [87 P. 379]; *Estate of Matthiessen,* 23 Cal.App.2d 608, 615 [73 P.2d 1267].) This rule is applicable to the facts of the present case and hence the trial court properly considered respondent's application in the present account.

Such authorities as *Estate of Davis,* 65 Cal. 309 [4 P. 22], and *In re Leavitt,* 8 Cal.App. 756 [97 P. 916], relied on by objector, are factually distinguishable from the instant case. For example, in *Estate of Davis* the administrator had expressly renounced his right to a statutory commission prior to his appointment, and *In re Leavitt* merely held that a successor trustee is not entitled to commissions predicated on the entire value of the trust estate simply because his predecessor renounced his right to compensation.

■ (c) The doctrine of laches is inapplicable in probate proceedings where the question of a trustee's compensation is

presented in connection with the filing of an account current or a final account. (*Estate of Gillett,* 73 Cal.App.2d 588, 600 [166 P.2d 870]. *Cf., Estate of Hume,* 179 Cal. 338, 346 [176 P. 681].) Therefore objector's contention on this point is untenable.

*Estate of Crosby,* 55 Cal. 574, relied on by objector, is factually distinguishable from the present case and is not here in point. In *Estate of Crosby,* the doctrine was applied as between an estate and a stranger thereto, while in the present case it is being urged that at such time as the trustee makes an accounting of the trust funds he may be either credited or debited in connection with the account.

■ Second: *Was the probate court's allowance of $30,000 as compensation for extraordinary services excessive?*

This question must be answered in the negative. Bearing in mind the rule, that when a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact (*Estate of Isenberg,* 63 Cal.App.2d 214, 217 [146 P.2d 424]), the record discloses that Senator Roseberry, manager of the trust department of respondent stated, "Well, this is probably one of the most unique and unusual trusts we have had in our institution in the thirty-six or seven years I have been with it. . . . It was a public project in many ways, but its execution was entrusted to the bank." Another witness testified that the decree of distribution called for the construction of an observatory and hall of science, having a 12 inch telescope, a model of the solar system, a coelostat, a celestial globe, a collection of illuminated transparencies of the sun, planets and stars, and an exhibit showing the evolution of man; that when sufficient money had been accumulated in the trust the trustee appointed a scientist to advise as to carrying out this portion of the decree so that a scientific exhibit having appeal to laymen might be constructed; that as a result it was determined to make the major exhibit a planetarium; at that time only one existed in the United States and it became necessary for the manager of the trust department to negotiate with a representative of the Zeiss Company for the construction of the planetarium; that in 1931, the trustee entered into a contract with architects to draw plans and specifications for the observatory to cost

approximately $450,000; that in the meantime it was necessary to petition the court for instructions and thereafter a contract was made for the construction of the building which was of unique design requiring the trustee to negotiate a large number of changes with the builder, amounting, in fact, to 76 change orders executed and many more requests for changes discussed and rejected; that as it was desired to project motion pictures on the domed ceiling, plans had to be devised for projecting a flat image on a curved surface; that, in addition, the trustee had to select a scientific adviser, and upon the death of the first adviser selected, a successor had to be chosen; that seats of a special design were necessary for the planetarium; and more than 143 other contracts for services, supplies, materials and exhibits were made by the trustee in connection with the construction of the observatory. Finally the record discloses that the major time and attention of several officials of respondent was consumed in connection with the project for a period of approximately five years.

The foregoing testimony together with much other evidence received by the trial judge raised a question of fact for his determination which was sustained by substantial evidence.

■ Third: *Was the probate court without jurisdiction to allow respondent its reasonable attorneys' fees incurred in connection with the hearing upon objections to its application for extraordinary compensation?*

This question must be answered in the negative. A trustee is entitled to employ counsel and be reimbursed from the funds of the trust for reasonable sums paid for the services of such counsel whenever it is necessary to the proper administration, preservation or execution of the trust. (*Estate of Duffill,* 188 Cal. 536, 555 [206 P. 42]; *Conley* v. *Waite,* 134 Cal.App. 505, 506 [25 P.2d 496]; *Day* v. *First Trust & Savings Bank,* 47 Cal.App.2d 470, 480 [118 P.2d 51]; *In re Moore,* 96 Cal. 522, 531 [31 P. 584].) In the instant case respondent was justified in incurring attorneys' fees in connection with the proper administration and execution of the trust estate. Therefore the probate judge did not err in approving respondent's application for reasonable attorneys' fees.

*Winslow* v. *Harold G. Ferguson Corp.,* 25 Cal.2d 274 [153 P.2d 714], *Estate of Marre,* 18 Cal.2d 191 [114 P.2d 591], *Estate of Fritz,* 16 Cal.App.2d 519 [60 P.2d 1008], and *Estate of Fulton,* 23 Cal.App.2d 563 [73 P.2d 664], relied on by objector, are each distinguishable on their facts from those

obtaining in the present case, and no useful purpose would be served by pointing out the differences. Therefore we refrain from doing so.

Affirmed.

Moore, P. J., and Wilson, J., concurred.

A petition for a rehearing was denied June 7, 1950, and appellant's petition for a hearing by the Supreme Court was denied July 20, 1950. Traynor, J., voted for a hearing.